## SKELLY OIL CO. v. JOHNSTON.

### No. 5300.

Court of Civil Appeals of Texas. Amarillo.

May 5, 1941.

Rehearing Denied June 2, 1941.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

Stennis & Osborne, of Pampa, for appellee.

STOKES, Justice.

This is a common law action for damages filed by appellee against appellant, in which he sought to recover damages for personal injuries and damage to his automobile which he alleges he sustained in an accident upon the highway. The record shows that for a number of years prior to the accident, which happened November 29, 1939, appellant had maintained a gasoline manufacturing plant near a public road a few miles west of Pampa, in Gray County. In connection with its plant, appellant maintained two or more cooling towers which were used to cool water which had passed through its engines as cooling agencies for its machinery in order that the same water may again be used for a like purpose. The towers were constructed so that the hot water from the engines was conveyed into perforated pipes and through the holes in the pipes it was sprayed out into the cooling towers which were some thirty or thirty-five feet in height. Portions of the walls of the cooling towers were constructed of baffle boards through which air and wind passed and the water was cooled by contact with the air and wind. On occasions when the wind was strong the water would be blown through the openings between the baffle boards and driven in the direction in which the wind was blowing. These towers were located thirty or forty feet west of the road which appellee traveled in going from his home at Pampa to his work at the Stanolind Oil Company's plant which was located a few miles north of appellant's manufacturing plant. The testimony shows that when the wind was from the west, water would be blown from the cooling towers onto the road east of the towers and for a number of years wet places had thus been created which amounted at times to mud holes and made it difficult to drive an automobile past the towers on the dirt road. Some two or three years before the accident in question the county authorities surfaced the dirt road with oil, which was customary in such localities, thus equipping it with a hard surface. The color of the road after being surfaced with oil was dark and its surface smooth. On the night preceding the accident there had been a dew or fog which created a sheen and made it difficult to distinguish wet places, or places where water had been thrown or blown thereon, from those portions of the surface affected only by the light dew or fog. The material used to surface this particular road and the smoothness of its surface caused it to be more slippery when wet than it would have been if surfaced with other road materials. Appellee testified that he had traveled this road to his work for quite a long time and had frequently encountered a wet, slippery condition on the road immediately east of appellant's cooling towers. He said that about eight o'clock on the morning of the accident, as was his custom, he retarded the speed of his automobile in passing the cooling towers, anticipating that he might encounter a wet, slick place on the road, but, not observing such condition, he accelerated his speed after passing the towers and immediately his car skidded for some distance, finally leaving the pavement and overturning in a wheat field some six hundred feet north of the cooling towers. The accident resulted in serious personal injuries to appellee and considerable damage to his automobile.

The case was submitted to a jury upon special issues and upon the verdict returned by the jury in answer thereto the court rendered judgment in favor of appellee for $1,785, consisting of $1,300 for personal injuries, $125 for hospital and medical services, and $360 for damages to his automobile. Appellant filed and urged a motion for a new trial, which was overruled, and it duly excepted to the judgment, gave notice of appeal, and has brought the case to this court for review.

The case is presented here upon appropriate assignments of error and propositions of law in which appellant contends the judgment should be reversed, first, because under the testimony and certain findings of the jury, it is not liable to appellee as a matter of law, secondly, because it is shown by the record that appellee was guilty of contributory negligence which precludes his recovering anything of appellant, and,

thirdly, because the court committed reversible error in the manner and form, in certain particulars, in which the case was submitted to the jury.

Under the group of assignments which constitute appellant's first contention, it is asserted that there was no direct evidence that the wet spot on the road caused appellee's car to skid or that the accident resulted from the fact that a wet spot had been created on the road by water being blown thereon from appellant's cooling towers. It contends further in this connection that, if there was a hazard or dangerous spot on the road near its cooling towers, it was created by the use of oil, instead of other road materials, as a surface for the road, and the road having been surfaced or paved with oil seven or eight years after the cooling towers had been erected by appellant, it could not be charged with negligence in placing its cooling towers near the road before the road had been surfaced, nor was it under the legal duty of removing the cooling towers merely because oil had been used by the county authorities as material with which to pave the road.

At the close of the testimony, appellant presented to the court its motion for a peremptory instruction and after the verdict was returned by the jury it presented and urged a motion for judgment in its favor non obstante verdicto. If appellant is correct in its contentions with reference to the matters raised by these assignments of error, it was entitled to a peremptory instruction and to a judgment non obstante veredicto, as contended for by it, because it would not be liable to appellee as a matter of law. We do not agree with appellant, however, in these assertions. It was shown by the testimony that on frequent occasions, over a period of several years prior to the accident, water would be blown from the cooling towers onto the road and that the surface of the road would thereby be made slippery and dangerous for passing automobiles. The place on the road that would thus become wet and slippery depended upon the direction from which the wind was blowing. If the wind was directly from the west, the wet spot would be created directly east of the cooling towers, and if the wind was from the southwest, the water would be blown northeast so that the wet spot would be farther north. Appellee testified that he was aware of the danger and knew that on frequent occasions the road was slippery because of water having been blown thereon from appellant's cooling towers. He and other witnesses testified that because of the dark appearance of the road it was difficult to observe the exact location of the wet places, especially on mornings like the one upon which the accident occurred, when there had been dew or fog the night before and the entire road was made more or less damp. Appellee said he retarded the speed of his automobile to about twenty or twenty-five miles an hour in passing the cooling towers, and, thinking that he had passed over the place where the water may have been blown upon the road, he accelerated his speed and his car immediately began to skid and that the skidding culminated in the accident. Another witness testified that he was traveling a short distance behind appellee on the same morning and that when he reached the wet place on the road his car likewise began to skid and that it was caused by the wet condition of the road. We think the testimony is amply sufficient to establish the facts, as found by the jury, that water from appellant's cooling towers had been blown upon the highway immediately prior to the accident; that the operation of the cooling towers by appellant in such proximity to the highway as to permit water therefrom to be blown upon the highway constituted negligence, and that such negligence was a proximate cause of the accident which resulted in appellee's injury and damage. It is true that the jury did not find, nor does the evidence show, that appellant operated its cooling towers in a careless manner, nor that they were out of repair or constructed in a manner different from what they should have been. But it is a general rule of law that the owner or occupant of premises abutting upon a highway, road or street must exercise reasonable care not to jeopardize or endanger the safety of persons lawfully using the highway, road or street as a means of passage or travel, and that he will be liable for any injury that proximately results from his wrongful acts in that respect. He is under the duty so to use and manage his premises as not to inflict injury upon those who, in the exercise of their lawful right, may be using the highway, road or street as a means of passage or travel. Gulf, C. & S. F. R. Co. v. Oakes, 94 Tex. 155, 58 S.W. 999, 52 L.R.A. 293, 86 Am.St.Rep. 835; Southwestern Telegraph & Telephone Co. v. Sheppard, Tex.Civ.App., 189 S.W. 799; Beck v. Ferd Heim Brewing Co., 167 Mo. 195, 66 S.W. 928; Klepper v. Seymour

House Corp., 246 N.Y. 85, 158 N.E. 29, 62 A.L.R. 955; Stephens' Adm'r v. Deickman, 158 Ky. 337, 339, 164 S.W. 931, 934, 51 L. R.A.,N.S., 309.

In the Kentucky case of Stephens' Adm'r v. Deickman just cited, it was alleged that Deickman owned a building located at the intersection of two streets in the city of Covington. The building was equipped with a four-inch metal downspout which extended from the roof and emptied water from the roof upon the cement sidewalk in front of the building where it alternately froze and thawed. From the process of freezing and thawing ice accumulated and spread out upon the sidewalk in large quantities which created a dangerous condition for pedestrians who chanced to be passing. Appellant's decedent, while passing the building, stumbled upon the ridges of ice and fell, causing injuries which resulted in her death. It was alleged that the slick, slippery and dangerous condition had existed and continued for more than two weeks before the accident and was known to the appellee, or, by the exercise of ordinary diligence, he could have known of it during all of that time. The Circuit Court sustained the demurrers of Deickman and his tenants and, appellant declining to amend, the cause was dismissed. In passing upon the case the Court of Appeals of Kentucky reviewed a large number of cases from that, as well as other jurisdictions and, in passing upon the contention of appellant that the Circuit Court had erred in sustaining the demurrers and dismissing the cause of action, said: "From these authorities it follows that the property holder, in conducting the water from the roof of his house to the sidewalk, must use ordinary care not to cause an obstruction or nuisance, by which persons lawfully using the sidewalk, and in the exercise of ordinary care upon their part, may be injured; and, in case such an obstruction or nuisance should arise suddenly or unexpectedly, it is the landlord's duty to remove the obstruction or nuisance as soon as he has knowledge of its existence, or could have had such knowledge by the exercise of ordinary care. In the case at bar the petition alleges the ice had remained upon the sidewalk for more than two weeks before the accident, and to the knowledge of the appellees. Clearly, it stated a case of actionable negligence, and the demurrer to the petition should have been overruled."

The opinion in the case of Klepper v. Seymour House Corporation, supra, reveals that the plaintiff, while walking with her two children on a sidewalk, was injured by the falling of a large quantity of ice and snow from the roof of a building which abutted the street. She recovered a judgment which was reversed and her complaint dismissed by the intermediate appellate court of New York. In passing upon the correctness of this ruling, the Court of Appeals of that state likewise reviewed a large number of authorities and said [246 N.Y. 85, 158 N.E. 31, 62 A.L.R. 955]: "Although the complaint alleged against the owner both nuisance and negligence, the trial court sent the case to the jury on the theory of negligence. Nuisance and negligence at times so nearly merge into each other that it is difficult to separate them. A cornice, such as that in this case, may be a nuisance by reason of its danger to passers-by on the street, and at the same time the owner may be guilty of negligence in permitting snow and ice to accumulate upon it and fall in heavy mass upon the heads of people below. The existence of a nuisance in many, if not in most instances, presupposes negligence. These torts may be, and frequently are, coexisting and practically inseparable, as where the same acts or omissions constituting negligence give rise to a nuisance." In the course of the opinion the court quoted with approval from the Supreme Judicial Court of Massachusetts in the case of Shipley v. Fifty Associates, 106 Mass. 194, 199, 8 Am.Rep. 318, wherein it was shown that the roof was so constructed that snow and ice were likely to fall from natural causes on an adjoining highway. Speaking of the duty of the owner of the building the Massachusetts Court said: "He has no right so to construct his building that it will inevitably, at certain seasons of the year, and with more or less frequency, subject his neighbor to that kind of inconvenience; and no other proof of negligence on his part is needed. * * * He must at his peril keep the ice or the snow that collects upon his own roof, within his own limits; and is responsible for all dangers, if the shape of his roof is such as to throw them upon his neighbor's land, in the same manner as he would be if he threw them there himself."

■■ These cases and the many others cited by the courts in the courses of the opinions announce sound principles of law and they are directly applicable to the condition revealed by the record in the case now before us. It cannot matter whether appellant's cooling towers were located near

the highway before or after the county authorities paved the road and equipped it with a surface of oil. That the authorities had the right to use oil as a means of surfacing the highway cannot be questioned, and the fact that they did so can make no difference in respect to the duty which the law imposes upon appellant and all others who own and operate properties adjacent to public avenues. It was encumbent upon appellant to exercise reasonable care to prevent injury to travelers upon the highway as a result of the manner in which appellant utilized its equipment and plant. This it failed to do, and we cannot agree with appellant in its assertion that, as a matter of law, it was not liable to appellee for the injuries sustained by him.

In connection with these assignments of error, appellant makes the further assertion that there was no direct evidence of the fact that the wet spot on the road caused the skidding of appellee's car nor that, as a matter of fact, his car skidded on a wet spot created by the existence of its cooling towers or the manner in which it used them. It is true that appellee testified he did not observe the wet spot because the entire road was more or less damp from the fog or dew and there was little or no difference in its appearance where the wet spot existed from its appearance at other places. J. A. Orton, who was the superintendent of appellant's plant, testified, however, that he had been employed by appellant for ten years. He said that on occasions the wind blew sprays of water from the cooling towers onto the road; that on the very morning of the accident to appellee, the witness walked down the road and noticed a damp spot north and east of the cooling towers. He said that the records at the plant indicated that strong wind had blown from the south on the night before, but that the record kept at the plant was not necessarily accurate as to the exact direction of the wind and, when it showed the direction, it merely indicated the prevailing direction which could vary a few degrees and be from a direction slightly west of south. C. C. Harbour testified that he saw tracks on the road which clearly indicated a car had skidded on the wet portion of it. He said the tracks were clearly distinguishable and were located where the wet spot was. He could not testify as to the length of the skid marks but said they extended for a considerable distance in the direction of where appellee's car overturned. Appellee himself testified

that his car began skidding after he passed the cooling towers and Mr. Coats, who, shortly after the accident, came along the same road in his car, testified that when he reached the spot just north of the cooling towers, he found it exceedingly slippery. He said he drove into it at approximately twenty-five miles an hour and his car immediately began to skid. This testimony was undisputed and is entirely sufficient to form the basis of the jury's findings in reference to the cause of appellee's accident and injury. While no witness testified that he actually saw appellee's car skid on the wet place, yet the strong southerly wind the night before undoubtedly blew water from the cooling towers to a place on the highway north of where they were located, and the testimony is convincing that a wet, slippery place was thereby created on the road and that appellee's car skidded at a place which could not have been other than the place made wet by the water from the cooling towers. All the witnesses testified that the road was not slick at other places and, while there had been a dew or fog the night before, it was not of sufficient density to cause the highway to be slippery and made no visible change whatever upon the appearance of the ground or dirt contiguous thereto. We find no error revealed by these assignments and they will be overruled.

The next contention made by appellant is that the testimony of appellee himself and the findings of the jury in answer to special issues Nos. 20 to 23, inclusive, establish contributory negligence on the part of appellee and preclude any recovery of damages from appellant. In answering the special issues mentioned, the jury found that appellee had as much opportunity as appellant to observe and appreciate the risks involved in passing along the road near appellant's plant; that he did in fact fully appreciate the risks; that in the exercise of ordinary care he could have realized the risks involved, and that a person of ordinary prudence should have anticipated the possibility of water having been blown upon the road from the cooling towers. In connection with this phase of the matter, appellee testified that he accelerated the speed of his automobile immediately prior to the time it began to skid and that he was driving approximately forty miles an hour when it skidded. He said that he regarded the wet spot as being a place where unusual care should be observed and that he realized it would be dangerous to cross the wet spot at

such a speed. He said furthermore that the acceleration of his speed increased the tendency of the car to skid when it entered the wet place on the road. Appellant contends that these findings of the jury and this testimony of appellee establish its contention that appellee was guilty of contributory negligence which caused the injury and damage and the court erred in refusing to enter a judgment in its favor upon that theory. In answer to other special issues the jury found that appellee, in operating his car at the place in question, exercised that degree of care which would have been exercised by a person of ordinary prudence under the same or similar circumstances; that he also exercised the same degree of care in the matter of control of his automobile; that he exercised the same kind of care and prudence in the matter of keeping a lookout, and that the manner in which he handled his automobile, under all the circumstances, was not negligence. They also found that, in accelerating the speed of his car at the time, he was not guilty of negligence nor was the rate of speed being observed by him evidence of a want of care. The findings of the jury in respect to these matters were not different in effect from appellee's own testimony in regard to the same matters. He testified that on frequent occasions he had observed a wet spot on the highway near the cooling towers but that he had never discovered it at the place where it was on the morning of the accident. He said that, ordinarily, it was located east of the cooling towers and, thinking it probably was located there on the morning in question, he retarded the speed of his automobile to twenty or twenty-five miles an hour, which speed he observed until he thought he had passed the place where there might be a wet spot. After proceeding beyond the place where he thought there may be a wet spot, he accelerated the speed of his car and, while the facts show that he was then upon the wet spot, he said he thought he had passed it and that it would be safe to resume his former speed. This is the effect of the jury's findings in answer to special issues Nos. 20 to 23. In other words, as we understand the answers of the jury, they are simply to the effect that appellee had an opportunity to observe and appreciate the risks, which he himself says he did observe and appreciate; that in the exercise of ordinary care he could have realized the risks involved, which he himself says he did realize, and that a person of ordinary prudence should have anticipated the possibility of a wet, slippery place upon the road, which he himself says he did anticipate. Notwithstanding all this, the jury found he exercised that degree of care which would have been exercised by a person of ordinary prudence under the same or similar circumstances and we think the finding is amply supported by the testimony in the case. As we have already said, the wet place on the pavement, on the morning of the accident, was located at a place different from that at which ordinarily it was found to be, and all the testimony shows that it was difficult, if not practically impossible, to distinguish the place which had been made wet by water blown from the cooling towers, from other places on the road. In our opinion, these assignments of error are without merit and will be overruled.

The third contention made by appellant is that the court did not submit to the jury any special issue which inquired as to whether or not the wet place on the road caused the skidding of appellee's automobile and culminated in the accident, and it assigns error of the court in overruling its exception to the charge because of failure to include such a special issue. In answering special issues which were submitted to them, the jury found that, just prior to the accident, water had been blown upon the highway from appellant's cooling towers; that appellant operated its cooling towers so that water therefrom blew upon the highway; that the operation of the cooling towers by appellant in such manner as that water therefrom blew upon the highway was negligence, and that such negligence was a proximate cause of the accident and resulting injury and damage to appellee. While there was no direct special issue in which the jury were asked to find whether or not appellee's car skidded at the wet spot created by the water from appellant's towers, yet the answers to these special issues sufficiently establish the allegations made by appellee in that respect. The uncontradicted testimony was to the effect that a wet spot existed upon the highway some distance north of the cooling towers and that it was created by water that had been blown upon the highway from appellant's cooling towers. It was undisputed also that marks made upon the pavement by the skidding of automobile tires were plainly visible, and that the skidding caused the accident. In view of the undisputed testimony in this respect and the total absence of any

other theory upon which the accident could have occurred, we are unable to find any error in the failure of the court to submit the direct question as to whether or not appellee's car actually skidded on the wet spot created by the water from appellant's towers.

Appellant makes the further assertion just here that, the court having ignored, and not having submitted, the fact-question as to whether or not appellee's car skidded on the wet spot, but inquired only as to proximate cause in reference thereto, the court either assumed that the accident occurred as claimed by appellee or made a duplicitous submission, either of which was reversible error. From what we have said, it will be seen that the special issues submitted had reference to the questions of whether or not water was blown upon the highway from the towers; of whether or not appellant had operated its towers so that water therefrom blew upon the highway; of whether or not it was negligence so to operate them, and of whether or not such negligence was a proximate cause of the injury. The question of proximate cause that was submitted by the court referred, therefore, to the preceding special issues which, as we have said, established the gravamen of the same subject-matter that is involved in appellant's contention here. It cannot be said that the court assumed appellee's car skidded upon the wet spot in the highway, because the effect of the jury's findings was to establish that fact. It is obvious, too, that the issue upon proximate cause did not encompass the fact-question of whether or not the car skidded on the wet spot in the highway.

■■ Appellee alleged that his automobile had been damaged in the accident to the extent of $360 and, in addition to other items of damage, he sought to recover that sum as damages to his automobile. It developed upon the trial that he carried insurance on the car and that the insurance company had paid $356 upon the repair bill. The judgment of the court awarded appellee damages to his automobile in the sum of $360. Inasmuch as this was the amount alleged by appellee, he could not recover a greater sum. Of this amount the insurance company paid $356, and it is obvious that appellee was not entitled to recover the amount so paid by his insurance carrier. In fact, he confesses error in this respect but contends that the amount which he was not entitled to recover is $310 instead of the full amount paid by the insurance com-

pany. In view of his pleadings we do not agree with appellee in this respect; but are of the opinion that the judgment should be reduced by the amount actually paid by the insurance company which, as we have said, is $356.

We have carefully considered all of the assignments of error presented by appellant and, in our opinion, no reversible error is shown by any of them. The judgment of the court below will be reformed and reduced in the sum of $356, and, as so reformed, it will be affirmed.