Kenneth CARTER, Carolyn Carter, and the Estate of Jimmy Dean Carter, Deceased, Appellants,

v.

STEERE TANK LINES, INC., Diamond Shamrock Refining and Marketing Company and Sylvester Medina, Appellees.

No. 07–90–0074–CV.

Court of Appeals of Texas, Amarillo.

June 25, 1992.

Rehearing Overruled July 28, 1992.

Moore, Lewis & Russwurm, Thomas C. Moore, Dumas, for appellants.

Underwood, Wilson, Berry, Stein & Johnson, Kelly Utsinger, Gibson, Ochsner & Adkins, A.B. Hankins and William S. Leach, Amarillo, for appellees.

Before DODSON, BOYD and POFF, JJ.

POFF, Justice.

This is an appeal by Kenneth Carter, Carolyn Carter, and the Estate of Jimmy Dean Carter, Deceased (the Carters) arising from a jury trial which resulted in a take-nothing judgment against appellees Sylvester Medina and Steere Tank Lines, Inc., and a summary judgment in favor of appellee Diamond Shamrock Refining and Marketing Company (Shamrock). The Carters' cause of action arises from a July 29, 1987 traffic accident involving Jimmy Carter's (Jimmy) vehicle and a Steere Tank Lines truck driven by Medina.

The accident took place around 11:00 a.m. on Highway 119 in Moore County, Texas, adjacent to the Diamond Shamrock refinery. Jimmy was proceeding west on Highway 119 at about 57 to 63 miles per hour when he came upon the Steere Tank truck. It was also traveling west, but at a very slow rate of speed. Medina had just completed weighing his vehicle at the Shamrock plant on the north side of the road, and was going to the Shamrock refin-

ery on the south side of the road to load his truck with asphalt. To go from the north plant to the south plant required Medina to enter Highway 119 and travel westerly approximately 130 feet and then turn left across the highway into the south plant. As Jimmy overtook Medina, Jimmy attempted to pass Medina on the left. At the same instant, Medina began his left turn. When Medina began turning across the passing lane, Jimmy attempted to swerve to the right to avoid a collision. The maneuver was unsuccessful and Jimmy's vehicle collided with the rear of the truck. Jimmy was fatally injured as a result of the collision.

In their first point of error, the Carters contend the court erred in granting Shamrock's summary judgment. In points of error two, three, four, and five, the Carters complain of various evidentiary rulings by the court in the trial on the merits.

In addressing point of error number one, I find the summary judgment proof establishes the following. Shamrock's plant is located on both the north and south sides of Highway 119. Highway 119 is a two-lane highway running east and west at this location. The plant is so designed that trucks must traverse the plant on both the north and south sides of the highway in order to pick up a load of asphalt. A truck must first enter the north gate to be weighed and then must exit the north gate and enter the south gate to be loaded. Upon completion of loading, the truck exits the plant via the south gate. The north and south gates are not directly across the highway from each other, but rather the south gate is approximately 130 feet west of the north gate.

On the morning of the collision, Medina, the Steere Tank Lines driver at Shamrock's direction, entered the Shamrock plant on the north side of the highway and had his truck weighed. He then exited the plant and turned right on Highway 119 and headed west two or two and one-half truck lengths. Medina testified he had completed his right turn and his vehicle was travel-

ing west on the highway in a straight line. He further testified he had turned on his left turn signal. He had not shifted gears and was traveling less than 10 miles per hour. As he began making his left turn into the south gate, his truck was struck by Jimmy's vehicle, which was also headed west on the highway and was attempting to pass Medina.[1]

The portion of the highway upon which the accident occurred was designated for passing. No signs were erected designating the area as a danger area. The day of the accident, July 29, 1987, was the first day that Shamrock had required trucks to be weighed on the north side of the highway and loaded on the south side. Prior to July 29, all asphalt trucks had been weighed and loaded on the north side of the highway. Thus, previously when trucks exited the north gate and headed east or west, there had been no need for a subsequent turn. The evidence showed Jimmy frequently traveled this highway and was familiar with the established traffic patterns.

In examining the first point of error, the *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985) test will be employed. Employing the *Nixon v. Mr. Property Management* test, all evidence favorable to the Carters will be taken as true and all doubts resolved in the Carters' favor. Under this standard, I find there is no evidence that Medina was negligent in the operation of his truck. Thus, it is assumed Medina exercised due care by entering the highway and beginning his left turn in a safe and prudent manner. Therefore, Medina's driving was not a proximate cause of the collision.

It is taken as true that the owner of property abutting a public highway must exercise reasonable care not to jeopardize or endanger the safety of persons lawfully using the highway as a means of passage or travel and that the owner is liable for any injury that proximately results from his wrongful acts in such respect. This very court, in *Skelly Oil Co. v. Johnston*,

---

**1.** Medina testified to these facts in his deposition that was made part of the summary judg-

ment evidence. He testified to the same facts at trial.

151 S.W.2d 863 (Tex.Civ.App.—Amarillo 1941, writ ref'd), enunciated this doctrine of landowner liability. *See also Alamo Nat. Bank v. Kraus,* 616 S.W.2d 908 (Tex. 1981). I, therefore, cannot accept Shamrock's contention that it owed no duty to Jimmy or other travelers as they used the highway abutting its plant.

Clearly, if Jimmy's vehicle had been struck by falling debris from the Shamrock plant, liability would attach. *Alamo Nat. Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981). Likewise, if water blown from a Shamrock cooling tower had created a slippery spot on the highway, *Skelly Oil Co. v. Johnston,* 151 S.W.2d at 864, or if smoke from the plant drifted across the highway, *Atchison v. Texas & P. Ry. Co.,* 143 Tex. 466, 186 S.W.2d 228 (1945), or if a tall stand of grass and weeds was allowed to obscure the view of a highway, *Hamric v. Kansas City Southern Ry. Co.,* 718 S.W.2d 916 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.), liability would attach.

Shamrock notes, however, that in each of these cases the "agent of catastrophe" set into motion was an inanimate object: smoke, water, tall grass, a falling wall. Shamrock argues that while the duty not to endanger travelers exists as to inanimate objects, it does not exist in this case because Shamrock had no control over Medina, who was an independent contractor.

The Carters counter by citing *Golden Villa Nursing Home, Inc. v. Smith,* 674 S.W.2d 343, 350 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), as authority for the fact that a landowner's duty exists even when the object released onto the highway is not inanimate. In *Golden Villa,* the court held that a nursing home had a duty to exercise reasonable care not to endanger the safety of a motorcyclist using the highway abutting the home. The nursing home was found to have breached its duty by allowing a patient—obviously an animate object—to wander onto the nearby highway. The court held the evidence sufficient to find that the patient constituted a clear and present danger to travelers because they would have to swerve or otherwise attempt to avoid hitting her if she was on the highway.

Shamrock does not cite nor attempt to distinguish *Golden Villa* but rather points to *Naumann v. Windsor Gypsum, Inc.,* 749 S.W.2d 189 (Tex.App.—San Antonio 1988, writ denied), for the proposition that a landowner has no duty not to endanger travelers when the agent of catastrophe is an animate object over which the landowner has no control. Shamrock further contends *Naumann* holds that a landowner owes no duty to the traveling public in the design of entrance or egress from its property.

*Naumann* involved a truck driven by an independent contractor—another most decidedly animate object—which entered a highway from an adjoining landowner's (Windsor Gypsum) property and was involved in an accident. In finding the landowner not liable, the *Naumann* court did not, as Shamrock contends, hold that a landowner has no duty not to endanger travelers when the agent of catastrophe is animate. A brief examination of the *Naumann* court's treatment of the *Golden Villa* case makes this clear.

In *Naumann,* the court recognized the *Golden Villa* case as correctly finding a duty on the part of the nursing home to keep the patient in question from wandering onto the highway. *Id.* at 191. The *Naumann* court characterized the patient as a person who was unable to provide for her own safety and who had on prior occasions wandered off the nursing home property. *Id.* Thus, the patient was a foreseeable danger to motorists. Because the nursing home failed to properly supervise the patient, the home had created a dangerous situation for which it was responsible.

In *Naumann,* on the other hand, the court found that the landowner did not create a dangerous situation in the placement of its gate. The *Naumann* court, therefore, distinguished *Golden Villa* not on the basis of duty but on the basis of foreseeability and causation. The *Naumann* court found their facts unlike the facts in *Golden Villa* where there was a foreseeable danger, and the animate object,

the mental patient, was not found to be responsible for her actions.

The court correctly noted in *Naumann* that Windsor Gypsum had every right to expect the truck drivers, over whom they had no control, to exercise due care in the operation of their vehicles as they exited Windsor Gypsum's plant. It was not foreseeable that the animate object, the truck driver, would act in a negligent manner. Windsor Gypsum was not obligated to guard passing motorists against the possible negligence of independent contractors. *Id.* at 192. Shamrock likens its facts to those in *Naumann* and argues that *Naumann* forecloses the prospect of liability on their part. I do not agree.

In *Naumann,* the truck driver had completed loading his truck and had safely exited the plant and proceeded 264 feet to a stop sign at a highway intersection. Windsor Gypsum had not designed its plant so as to incorporate into its loading traffic pattern the use of a public highway. In the present case, the truck driver, however, had not completed his business with Shamrock at the time of the accident, but rather he was using a public highway to proceed from one part of the Shamrock plant to another.

The most dissimilar element in the cases and the linchpin of the Carters' case is the action taken by the driver immediately preceding the accident. As previously noted, for purposes of this appeal it is assumed Medina was not negligent in the operation of his truck when he negotiated his right turn onto the highway and prepared for his left turn into the south gate. Such cannot be said for the driver in the *Naumann* case. The undisputed evidence in *Naumann* was that as the Windsor Gypsum truck attempted to turn right at the intersection of Cypress Ridge Road and F.M. 78, the truck, due to its length and the width of F.M. 78, crossed the center line and blocked both lanes of traffic. The Naumann vehicle collided with the truck as it blocked both lanes of F.M. 78. The action of the truck driver in blocking the highway was the proximate cause of the collision. The *Naumann* court found such conduct

to be an unforeseeable negligent act of the independent contractor.

A third dissimilarity in facts is that Windsor Gypsum had in fact requested the highway department to install truck warning signs. At the time of the accident, a truck warning sign was in place and operational at the accident scene. The truck warning sign was 50 yards east of the accident scene and was visible to Naumann as she headed west on F.M. 78. *Id.* at 191.

The factual differences in *Naumann* and the Carters' case are crucial, for unlike Shamrock we do not read *Naumann* as relieving land owners from all duty to highway travelers in the placement of gates adjacent to a highway. The actual conclusion in *Naumann* is stated on pages 191–92:

> We must conclude that a landowner's duty to exercise reasonable care not to endanger the safety of persons on an abutting highway does not create an obligation to guard passing motorists against the possible negligence of an independent contractor over whom the landowner exercises no control and whose competence to perform his duties the landowner has no reason to doubt.

I do not agree that the element of control was the deciding factor in *Naumann* or in this case. Actual control of the agent released upon the highway is not determinative of a landowner's liability, for it cannot be argued that a landowner has control over the wind when it blows smoke or water onto a highway just as it could not be argued that the Golden Villa Nursing Home exercised any control over its patient's actions once she escaped. While the exercise of control over the actor released onto the highway would tend to establish liability on the landowner for the actor's actions, lack of control will not absolve the landowner of liability. The key to the *Naumann* decision is the lack of control over the independent contractor coupled with the unforeseeable negligent conduct of the independent contractor, in turning into the path of the Naumann vehicle.

The *Naumann* court emphasized that even though Windsor Gypsum knew that

truck drivers, in making the turn from the stop sign, had to block both lanes when turning east on F.M. 78, it had every right to expect them to exercise due care in executing the turn. The court finally concluded the dangerous situation was not created by Windsor Gypsum, for Windsor Gypsum was not responsible for the narrowness of the roadways nor the length of the truck. *Id.* at 192. The dangerous situation was created by the negligent act of the independent contractor, not by the placement of the plant gate.

The *Naumann* court concludes with the assertion that "there is no genuine issue of fact as to the existence of a duty owed by Windsor to plaintiffs. . . ." *Id.* With this I cannot agree, for Windsor Gypsum as an adjacent landowner owed a duty to Naumann as a traveler on the highway to exercise reasonable care in the use of its property so as not to endanger travelers. In my opinion, a better explanation of the *Naumann* holding is that the duty owed Naumann did not extend to protecting her from the negligent acts of the driver of the independent contractor's truck.

In analyzing the Carters' contention that the summary judgment was erroneously granted, I conclude that Jimmy's death was not caused by the negligent acts of Medina, the independent contractor. Therefore, it is not necessary to address Shamrock's contention that its lack of control over Medina absolved it of liability.[2] Shamrock did owe a duty to Jimmy and all other travelers to exercise reasonable care in the use of its property so as not to endanger travelers on the abutting highway. The Carters have alleged that this duty was breached by the positioning of the exit and entrance gates. The Carters allege and the facts prove that a truck, in loading asphalt at Shamrock's plant, must turn right onto the highway, travel a short distance at ten miles per hour and then turn left from the highway into Shamrock's plant. The record reveals that this movement, even when done with care, can and did result in a catastrophic accident. The Carters allege these circumstances equate to a dangerous condition, which was created by Shamrock. The Carters argue that it follows that the creation of the dangerous situation is in fact a breach of Shamrock's duty to not endanger travelers. Viewing the record, I cannot find as a matter of law that Shamrock owed Jimmy no duty in the placement of the plant gates. I find there is a genuine issue of fact as to whether Shamrock breached this duty. I, therefore, would sustain point of error number one.

■ In their second point of error, the Carters contend the court erred in failing to admit into evidence the accident report prepared by Department of Public Safety (DPS) trooper McAnally. The court sustained Medina and Steere Tank Line's objection that the accident report was hearsay and contained expert opinions from an unlisted expert witness, McAnally. We cannot agree that the accident report was properly excluded as hearsay for accident reports are admissible under Tex.R.Civ. Evid. 803(8) as exceptions to the hearsay rule. *Clement v. Texas Dept. of Public Safety,* 726 S.W.2d 579, 581 (Tex.App.— Fort Worth 1986, no writ); *Porter v. Texas Dept. of Public Safety,* 712 S.W.2d 263, 265 (Tex.App.—San Antonio 1986, no writ). Having determined the accident report is admissible under the 803 hearsay exception, we then must determine if the accident report contained expert opinions.

■ We cannot make this determination, however, for the Carters failed to include the accident report in the appellate record.[3]

---

2. I do not mean to leave the impression I accept Shamrock's position that it exercised no control over Medina. While it is true Shamrock could not control the manner in which Medina drove his truck, they did by the design of their plant dictate the path trucks were to follow. They, therefore, controlled the traffic flow movement, if not the manner of the movement.

The absence of negligence by Medina renders irrelevant the question of Shamrock's control over his actions. The question of control of an independent contractor only becomes relevant when examining a third party's potential liability for the negligent acts of the independent contractor.

3. We are able to ascertain from the briefs and argument of counsel that the evidence which was concluded to be opinion testimony concerned Trooper McAnally's written assessment

Under these circumstances, it is impossible for this court to determine whether the error, if any, was reasonably calculated and probably did cause the rendition of an improper judgment. *Kraft v. Nat. Union Fire Ins. Co.,* 743 S.W.2d 672 (Tex.App.—El Paso 1987, writ denied). Where a document is not made part of the record on appeal, the trial court's exclusion of the document may not be made the basis for a reversal. *Vega v. Royal Crown Bottling Company,* 526 S.W.2d 729 (Tex.Civ.App.—Corpus Christi 1975, no writ). Point of error number two is overruled.

In point of error three, the Carters allege the court erred in excluding testimony from Trooper McAnally. The court concluded the testimony concerning the proper method of turning left would be expert testimony. The testimony sought to be elicited from McAnally was not one of scientific, technical or other specialized knowledge, and the testimony in our opinion could be given by a lay witness under Tex.R.Civ.Evid. 701. Rule 701 provides a lay witness may testify in the form of opinions or inferences when such testimony is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. While DPS troopers often possess the training and expertise to qualify as expert witnesses in traffic collision cases, this qualification does not preclude them from also giving lay opinions. A police officer may give lay opinion testimony if the testimony is based on his own personal observations and experiences as a police officer. *Williams v. State,* 760 S.W.2d 292 (Tex.App.—Texarkana 1988, writ ref'd). Since a trooper such as McAnally could give both expert and lay opinions, the crucial question becomes what facts or opinions were sought to be elicited. We do not agree with the trial court that the trooper's description of the proper method for making a left turn is expert testimony. It was, therefore, error to exclude Trooper McAnally's testimony.[4]

The record is silent, however, as to what testimony Trooper McAnally would have offered. When the statement of facts does not reflect what the excluded testimony would have been, no reversible error is shown. *Huckaby v. Henderson,* 635 S.W.2d 129 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Point of error three is therefore overruled.

In their fourth point of error, the Carters complain of the court's failure to sustain their objection to a cross-examination question based on an unauthenticated learned treatise. During its cross-examination of Pat Donley, a chemist offered by the Carters as an expert witness, Medina/Steere sought ·to illicit from Donley whether he agreed or disagreed with certain conclusions regarding the effects of a hangover on driving skill. The opinions or conclusions were contained in an article in the periodical, "Medical News." The Carters contend the questions are hearsay and are inadmissible due to Medina/Steere's failure to comply with the predicate required in Rule 803(18). Medina/Steere also contends the questions were not hearsay, but were rather inquiries to ascertain whether such articles existed. Citing *Lubbock Bus Company v. Pearson,* 277 S.W.2d 186 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.), Medina/Steere contends the questions were legitimate efforts to test the credibility of the expert. It is well settled an expert witness may properly be impeached by asking whether he or she agrees or disagrees with the statements contained in treatises, books, and scientific journals. Such cross-examination, however, is limited to publications which the witness recognizes as authoritative or publications upon which the expert has relied. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949); *Wendell v. Central Power and Light Co.,* 677 S.W.2d 610 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The record is clear that Pat Donley did not rely upon nor recognize "Medical News" as an

that Medina, by turning left, cut-off Jimmy Carter's vehicle as Jimmy was trying to pass or as Jimmy had assumed the passing position.

4. Having found the testimony to be lay opinion, it is irrelevant whether Trooper McAnally was listed as an expert witness.

authoritative learned treatise. When asked if he was familiar with "Medical News," he replied he was not. He was then given an opportunity to examine a copy of the "Medical News" containing the story about which Steere wanted to question him. After Donley had examined the article, he was asked if it were a fair characterization of the article that a study seemed to indicate that even after blood alcohol levels have returned to zero, there is still some residual effect on driving abilities. Once again, the Carters' counsel objected, and the court again overruled the objection.

Medina/Steere's reliance on *Lubbock Bus Company* is misplaced. The expert witnesses in *Lubbock Bus Company* were not asked to agree or disagree with a statement contained in a learned treatise. The cross-examiner did not quote the question from the book or attribute the question to the book he had before him. The Carters' objection should have been sustained, for it was a clear violation of the hearsay rule to allow Steere's attorney to ask Donley to agree or disagree with a statement from a source upon which Donley had not relied and which he did not recognize as authoritative.

■ In point of error five, the Carters contend the court erred in failing to sustain their objection to testimony concerning the absence of obstructions that would have prevented Jimmy from seeing the Steere Tank Lines truck. The witness offering the objectionable evidence, Mr. Philley, a Shamrock maintenance supervisor, testified via deposition that he was 500 or 600 feet away when the accident happened. The supervisor was next asked if he remembered anything that would have prevented Jimmy from seeing the truck in front of him. The Carters objected to this question because it called for speculation and conclusion.

Shamrock counters that surely a witness may be allowed to testify as to what he saw with his own eyes. We agree this is true but we do not agree that such is a proper characterization of Mr. Philley's testimony. Philley was asked not what he saw, but what Jimmy saw. Examining the record, we find no evidence of Philley's location at the time of the accident, other than he was 500 or 600 feet from the scene of the accident. To be competent to answer the question asked, we find Philley would have had to be in a position to observe what Jimmy observed. Therefore, Philley's location was relevant. Absent evidence of Philley's location, the answer is speculative, and the objection should have been sustained.

■ Having found numerous errors in the court's ruling, we must at this time make a harmless error analysis of the error found in points of error four and five. We must determine whether the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b). In determining the harmfulness of the error, we are obliged to look at the entire record. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex.1990); *Jones v. Kinder*, 807 S.W.2d 868, 873 (Tex.App.—Amarillo 1991).

■ In addressing point of error four, we first note evidence of diminished capacity due to intoxication is highly prejudicial and likely to inflame most jury panels. We find this especially true in cases involving traffic accidents where the mental and physical faculties of a driver are of prime importance in determining the negligent operation of the motor vehicle.

The evidence in this case was especially crucial for if believed by the jury, the evidence tended to impeach the Carters' contention that although Jimmy had consumed alcoholic beverages the night before the accident, he was not impaired the morning of the accident. Absent the inadmissible evidence, there was no evidence of diminished capacity due to alcohol consumption at the time of the accident. In fact, four witnesses testified they observed Jimmy the morning of the accident and he had the normal use of his faculties. The expert, Pat Donley, also testified the autopsy reports did not evidence intoxication. But for the court's erroneous admission of the learned treatise hearsay, there would have been no question of negligence due to in-

toxication. We find the error was reasonably calculated to cause and probably did cause the jury to find Jimmy negligent.[5]

Medina/Steere argue, however, that even if the evidence was harmful and prejudicial on the issue of Jimmy's negligence, it was irrelevant and therefore not harmful on the issue of Medina's negligence. Medina/Steere contends this is proven by the jury's finding that Medina was not negligent. Medina/Steere contends Jimmy's sobriety or lack thereof is of no import when considering the possible negligent acts of Medina. Jimmy's state of sobriety only is relevant to the question of his negligence and the response to this issue is irrelevant since the jury failed to find negligent acts on the part of Medina. For authority, Medina/Steere cite *Ward v. Houston & North Texas Motor Freight Lines,* 308 S.W.2d 98 (Tex.Civ.App.—Texarkana 1957, no writ) and *Valdez v. Yellow Cab Co.,* 260 S.W.2d 715 (Tex.Civ.App.—San Antonio 1953, no writ).

In *Valdez,* the court held that errors in improper admission or exclusion of evidence relating to defendant's primary negligence is harmless since the jury found plaintiff's contributory negligence. Similarly in *Ward,* the court reasoned the failure of the trial court to submit certain additional issues inquiring into defendant's negligent conduct was "immaterial" in light of the finding of contributory negligence.

We find neither of these contributory negligence cases to be controlling under our present law of comparative negligence. No longer will a finding of negligence on the part of a plaintiff render irrelevant the jury's inquiry into a defendant's negligent conduct. Our system of comparative negligence makes the negligence of both plaintiff and defendant a relevant part of the negligence equation. Having found Jimmy to be negligent, the jury was still required to determine the negligence, if any, of Medina. The Carters had the burden to show

Medina's negligent conduct. For the evidence of Jimmy's intoxication to have been harmful on the question of Medina's negligence, the evidence must have increased the Carters' burden; *i.e.,* the evidence of Jimmy's intoxication made it more difficult for the Carters to establish Medina's negligence. There must, therefore, be some causal relationship between Jimmy's intoxication and Medina's negligent conduct. Under the facts in this case, we find no such relationship.

Absent this causal relationship, our finding that the intoxication evidence probably did cause the jury to find plaintiff negligent does not lead us to conclude such a finding of negligence on plaintiff's part probably did cause the jury to find defendant was not negligent. We cannot assume that a negligence finding on plaintiff makes it more likely there will be a no negligence finding on defendant. Nor are we persuaded that a finding of no negligence on the part of Jimmy would have resulted in a negligence finding against Medina. Under the facts, a no negligence finding for Jimmy could have rationally coexisted with a no negligence finding for Medina. Such a finding is supportable under this record.

Having found the error did not reasonably cause the jury to have found no negligence by Medina, we find the error to be harmless. Point of error four is therefore overruled.

 In addressing the potential harm of the court's erroneous admission of Philley's testimony, we first note the testimony was cumulative. There were other witnesses and other demonstrative evidence from which the jury could have concluded "there were no obstructions in Jimmy's field of vision." Erroneous admission of testimony that is cumulative is ordinarily not harmful. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361 (Tex. 1987); *Pyle v. Southern Pacific Transp. Co.,* 774 S.W.2d 693 (Tex.App.—Houston

---

5. We note the court's utilization of a global

negligence issue makes the harmful error analy-

[1st Dist.] 1989, writ denied).[6] Thus, we cannot find that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. Point of error five is overruled.

The Court having overruled point of error number one by a split decision, the summary judgment in favor of Diamond Shamrock is affirmed. All points of error relating to Medina/Steere having been unanimously overruled, that portion of the judgment in favor of Medina/Steere is also affirmed.

DODSON, Justice, concurring and dissenting.

I agree that appellants' points of error two through five should be overruled and that the take-nothing judgment in favor of Sylvester Medina and Steere Tank Lines, Inc. should be affirmed. However, I disagree that appellants' first point of error should be sustained and that appellants' cause of action against Diamond Shamrock Refining and Marketing Company should be reversed and remanded for a new trial.

 In their first point of error, appellants claim the trial court erred by granting Diamond Shamrock's motion for summary judgment on the ground that Diamond Shamrock had no legal duty to Jimmy Dean Carter. I would overrule this point of error.

In Texas, reasonable foreseeability is an essential element of actionable negligence (*i.e.*, negligent duty). *Baumler v. Hazelwood*, 162 Tex. 361, 347 S.W.2d 560, 564 n. 2 (1961); *Houston Lighting and Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 606 (1960); *City of Dallas v. Maxwell*, 248 S.W. 667, 670 (Tex.Comm'n App.1923, holding approved). In *City of Dallas*, the court pointed out that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed to a person's

action or inaction. *City of Dallas*, 248 S.W. at 670.

The phrase "cannot be foreseen" is used in a qualified, and not in an absolute, sense, as denoting "cannot be foreseen" in light of common ordinary experience. *Id.* In that regard, the court stated:

Manifestly the test of common experience would exclude that degree of prescience which would require resort to mere speculation in possibly conceivable results, as well as to 'prophetic ken.' ... *The rule of anticipation or foreseeableness is therefore one of practical application, and not of philosophical or metaphysical speculation in causation.*

*Id.* (emphasis added). In essence, a person is legally required to foresee only probable or likely consequences, rather than possible consequences.

In this instance, the summary judgment evidence shows that the occurrence in question resulted from a successive chain of negligent actions on the part of one or both of the drivers involved. I am not persuaded that Diamond Shamrock owed Carter a legal duty to anticipate or foresee his or the third party's negligent acts. Neither were under Diamond Shamrock's control.

I would overrule appellants' first point of error and affirm the trial court's take-nothing judgment in favor of Diamond Shamrock.

BOYD, Justice, concurring in part, dissenting in part.

I agree that appellants' points of error two through five should be overruled and that the take-nothing judgment in favor of Sylvester Medina and Steere Tank Lines, Inc. should be affirmed. Furthermore, I agree with Justice Dodson that appellants' first point of error should likewise be overruled.

sis more difficult.

6. We further note Medina/Steere correctly contends that the evidence was relevant to the conduct of Jimmy, not Medina. Whether or not Jimmy had a clear field of vision was not rele-

vant to the question of Medina's negligence. We cannot, therefore, find the evidence was calculated to cause or probably did cause the jury to find no negligence on behalf of Medina.

In their first point of error, appellants contend the trial court erred in granting Diamond Shamrock's motion for summary judgment. The plaintiff's suit is based on claims of negligence. Diamond Shamrock had asserted its motion for summary judgment on the ground that there was no genuine issue of fact as to the absence of a legal duty owed by Diamond Shamrock.

The common law doctrine of negligence requires three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from that breach. Because a plaintiff must establish both the existence and the violation of a duty owed to the plaintiff to show liability in tort, the threshold inquiry in a negligence case must be duty, the determination of which is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). In making its determination, a court must consider several interrelated factors, including the risk, foreseeability, and likelihood of injury. Of these factors, foreseeability of the risk is the foremost and dominant consideration. *Id.* at 525. The test of foreseeability is "what one should under the circumstances reasonably anticipate as consequences of his conduct." *City of Dallas v. Maxwell*, 248 S.W. 667, 670 (Tex. Comm'n App.1923, holding approved).

Diamond Shamrock relies in part upon the rule that a person is not bound to anticipate the negligence or unlawful conduct of another. *See De Winne v. Allen*, 154 Tex. 316, 277 S.W.2d 95, 98 (1955). However, that is a general rule with limited exceptions which may arise where a person owes a duty because of the foreseeability of such conduct of another. *See e.g., El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex. 1987) (sale of alcohol to intoxicated person); *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595 (Tex.1987) (negligent entrustment claim). However, this is not a case falling within one of those limited exceptions because there was no summary

judgment evidence which indicates that Diamond Shamrock should have reasonably foreseen that as a result of its actions the truck drivers loading at its facility would engage in negligent or unlawful conduct.

That being so, the remaining question is whether it was reasonably foreseeable that an automobile accident would occur in the absence of negligence of the truck drivers which weighed and loaded at Diamond Shamrock's facilities. Justice Poff answers in the affirmative. I, however, respectfully disagree.

The summary judgment evidence established that Shamrock had physical facilities on the north and south sides of Farm Road 119 (the highway). In order to haul a load of asphalt, a truck driver would have to weigh his empty truck at the facilities on the north side of the road. Then the driver would have to drive "a hundred and something feet" on the highway to enter the gate on the south side of Diamond Shamrock facilities, where the truck would be loaded with asphalt. Viewing the evidence in favor of the nonmovant of the summary judgment, it indicates such a driver would not be able to travel more than ten miles an hour between the two locations.[1] To enter the southside facilities, the driver would have to turn left across the highway.

Justice Poff concludes:

The Carters allege and the facts prove that a truck, in loading asphalt at Shamrock's plant, must turn right onto the highway, travel a short distance at ten miles per hour and then turn left from the highway into Shamrock's plant. The record reveals that this movement, even when done with care, *can and did result in a catastrophic accident....* Viewing the record, I cannot find as a matter of law that Shamrock owed Jimmy no duty in the placement of the plant gates. 835 S.W.2d at 181 (emphasis added).

I respectfully disagree with that conclusion. Reiterated, in a negligence suit, the existence of duty is a question of law for

---

1. Sylvester Medina, the truck driver involved in the accident in question, testified in his deposition that he was driving ten miles an hour when

he started to make his turn and that he was not able to pick up any speed.

the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The pertinent question presented is not whether an accident could or did result, but whether an accident was reasonably foreseeable. However tempting it might be to apply a "can and did" test, to do so would be to replace foreseeability with hindsight. Any occurrence, however improbable, which actually occurs would satisfy such a duty inquiry. I can only conclude that, under the summary judgment evidence, an accident was not reasonably foreseeable. That being true, the trial court did not err in its judgment.

I find that appellants' first point of error should be overruled and the trial court's take-nothing judgment in favor of Diamond Shamrock be affirmed.