NO. 07-01-0204-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 1, 2001



______________________________




IN RE W. HUGH HARRELL, RELATOR



_________________________________






Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 In this original proceeding, relator W. Hugh Harrell has filed a petition for writ of
mandamus asking us to order the Honorable J. Blair Cherry, Judge of the 72nd District
Court of Lubbock County, to grant his motion filed in an underlying lawsuit to distribute
certain funds held in the registry of the court that represent the 2/5th interest of his brother,
Glenn Harrell, in a trust established by the parents of relator and Glenn Harrell for their
benefit. Relator claims entitlement to those funds based on an assignment from Glenn
Harrell to relator. For the reasons set forth below, the petition is denied.

 Mandamus is an extraordinary writ that should only be issued when the trial court
clearly abused its discretion, and there is no adequate remedy by appeal. Walker v.
Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A party seeking mandamus
relief must establish that he does not have an adequate remedy by appeal. In re Bay Area
Citizens Against Lawsuit Abuse, 982 S.W.2d 371, 374 (Tex. 1998) (orig. proceeding);
Walker, 827 S.W.2d at 842. The court's order denying relator's motion to distribute stated
that the order was interlocutory "since other matters are still pending before the Court" and
the funds were to remain in the registry of the court "until further order of the Court." 
Interlocutory rulings made by a trial court during the ordinary trial process may generally
be remedied by appeal. In re Texas Dept. of Protective and Regulatory Services, 990
S.W.2d 848, 850 (Tex.App.--Amarillo 1999) (orig. proceeding). 

 The real party in interest, Wiloma Harrell, independent executrix of the estate of
Glenn Harrell, has filed a brief in which she states it is her position that the assignment
from Glenn Harrell only assigned any causes of action he had against the trustee for
transactions involving the trust and did not assign his interest in the trust to relator. The
only documents before this court are the motion to distribute with the assignment attached
and the court's order regarding the same. The court's order does not finally determine the
rights of the parties to the funds in the registry of the court, but merely maintains the status
quo of the parties.

 Both relator and Wiloma Harrell agree that the case is set for trial on August 6,
2001. Relator argues that "the granting of this Petition for Writ of Mandamus establishes
judicial economy and corrects a grievous and erroneous ruling that would only be before
this Court of Appeals on an appeal." A remedy by appeal is not inadequate merely
because it involves more expense or delay. Walker, 827 S.W.2d at 842. While relator
argues that an appeal is not an appropriate remedy because his claim is vitiated and/or
severely compromised by the trial court's order, an ordinary appeal after a trial is
inadequate, and that because of the nearness of the trial, it involves an urgent necessity
that the writ be granted, these are conclusory statements and do not specifically inform this
court why relator's rights may not be protected by an appeal. Relator must establish the
effective denial of a reasonable opportunity to develop the merits of his case. Id. at 843.
We do not believe relator has met his burden to establish that he does not have an
appropriate remedy and is therefore entitled to mandamus relief.

 Accordingly, relator's petition for writ of mandamus is denied.


 Per Curiam

Do not publish.



umstances we have
here.

 Though a jury found Archer liable to her patient and judgment was entered upon its
verdict, this court reversed the decree. See Archer v. Warren, 118 S.W.3d 779 (Tex. App.
- Amarillo 2003, no pet.). So too did we render judgment denying the patient recovery
against Archer. Consequently, Archer was absolved of liability, and, per Nationwide, that
effectively insulated MPC from any purported Stowers claim arising from its refusal to settle
the cause prior to trial. Furthermore, the assertions of Archer to the contrary do not change
this outcome.

 While it may be that the rendition of a final judgment may give rise to damages, see
e.g., Street v. Honorable Second Court of Appeals, 756 S.W.2d 299, 301 (Tex. 1988) (so
acknowledging), that alone is not enough to warrant the imposition of liability. Indeed, one
may suffer injury even though no one else was negligent. See Carter v. Steere Tank Lines,
Inc., 835 S.W.2d 176, 186-87 (Tex. App.-Amarillo 1992, writ denied) ( Boyd, J.,
concurring) (stating that the "pertinent question . . . is not whether an accident could or did
result, but whether an accident was reasonably foreseeable. However tempting it might
be to apply a 'can and did test,' to do so would be to replace foreseeability with hindsight"). 
So, simply because Archer may have been injured by the rendition of a final judgment, that
alone does not mean MPC breached any duty imposed upon it by Stowers. And, it is the
absence of a breached duty (given our reversal of the underlying judgment) that posed the
insurmountable obstacle here.

 Moreover, our interpretation of the Stowers doctrine is supported by the very case
Archer relied upon. In Street, supra, the Supreme Court did acknowledge that to the extent
a judgment is not superseded, the presence and enforcement of the judgment may cause
injury. Street v. Honorable Second Court of Appeals, 756 S.W.2d at 301. Yet, it also
opined that limitations applicable to a Stowers claim did not begin to run "until all appeals
have been exhausted." Id. at 302 (Emphasis added). "Regardless of whether the
judgment is superseded, an insured who wishes may still wait until the underlying action
has been completely resolved before bringing a Stowers suit," the court continued. Id. 
This was so because "[n]o valid public policy is served by forcing an insured to bring an
action which may ultimately prove unnecessary." Id. (Emphasis added). The latter
passage is quite telling, especially when coupled with the pronouncement that limitations
do not accrue until "all" appeals have ended. Together, they reveal that while one need
not await until all appeals have ended to sue, all the elements to an enforceable Stowers
claim have yet to accrue while appeals remain pending. If this were not so, then the
Supreme Court had no basis upon which to say that limitations do not begin to run until the
disposition of all appeals. 

 Simply put, limitations begin to tick when a claim accrues. Moreno v. Sterling Drug,
Inc., 787 S.W.2d 348, 351 (Tex. 1990). And, a claim accrues upon there arising a
breached duty causing legal injury. Deloitte & Touch v. Weller, 976 S.W.2d 212, 215 (Tex.
App.- Amarillo 1998, pet. denied). If that point were to occur, viz a Stowers claim, upon
entry by the trial court of a final judgment, the limitation would begin to run at that point. 
So, if limitations do not begin until all appeals are over, then, logically, the claim has yet to
accrue while appeals remain pending. Moreover, we conclude that the missing element
is that of a breached duty for it cannot be the presence of an injury given the language in
Street acknowledging that the entry of a judgment itself causes injury. (2) 

 In sum, because Archer eventually won the underlying suit initiated by her patient,
she had no Stowers claim against MPC. So, the trial court did not err in entering a
summary judgment favoring the insurer. 

 Issue Two - Unfair Settlement Practices/Breached Duty to Negotiate Settlement

 Archer also asserts that the trial court erred in granting summary judgment upon her
claims against MPC involving unfair settlement practices and breached duty to negotiate
a settlement. Both causes of action were addressed in MPC's motion for summary
judgment. Moreover, both were founded upon the same allegations underlying her
Stowers claim. Simply put, Archer contended that MPC had a duty to reasonably negotiate
and settle the suit for a sum within the $200,000 policy limit. We overrule the contention
for the reasons mentioned in overruling her Stowers contention. Our having rendered a
judgment in Archer's favor in the underlying suit, we hold, as a matter of law, that MPC
breached none of the duties implicit in the two causes of action.

 Issue Three - Breach of Contract and Aiding and Abetting

 Next, Archer contends that the trial court erred in granting summary judgment on
her claims against MPC for breached contract and aiding and abetting her attorney's
various breaches of duty. It so erred, she continues, because neither claim was
encompassed within the motion for summary judgment. Yet, in its motion, MPC averred
that it was "entitled to judgment as a matter of law on all causes of action alleged by"
Archer. (Emphasis added). And, it believed itself so entitled because we reversed and
rendered judgment for Archer in the underlying suit. Given MPC's use of the phrase "on
all causes of action" when propounding the grounds for its summary judgment and the
plain meaning of the word "all," we cannot but disagree with Archer's contention. The
allegations of breached contract and aiding and abetting were indeed covered. Thus, we
overrule this issue as well.

 Issue Four - Legal Malpractice

 In this issue, Archer contends that the trial court erred in entering summary
judgment for her trial counsel and his firm (collectively referred to as Moss). We sustain
the issue in part and overrule it in part.

 Three causes of action had been asserted against Moss. They were claims for legal
malpractice, breach of fiduciary duty, and breach of the duty to act in good faith and deal
fairly. Furthermore, the claims were based upon counsel's 1) neglecting a legal matter, 2)
failing to "carry out completely the obligations . . . owed to Archer, including but not limited
to failing to adequately evaluate the case and . . . communicate to Archer the same
information . . . communicated to" MPC, and 3) failing to "represent Archer's interests
notwithstanding the interests of [MPC] in a situation in which the representation of Archer
was adversely limited by [counsel's] own interests in keeping the business and favor of"
MPC. 

 In addressing each of the aforementioned allegations, Moss accused Archer of
simply splitting one claim into the three different causes of action. Her sole complaint, in
his view, was nothing more than a claim for legal malpractice. This theme framed the
parameters of his motion for summary judgment (as well as his appellate brief wherein he
posited that her "claims for breach of fiduciary duty are in reality nothing more than claims
for legal negligence that Archer should not be permitted to fracture"). In other words, the
grounds alleged in the summary judgment motion referred to the malpractice action, as
opposed to the choses sounding in breached fiduciary duty. Additionally, those grounds
were limitations, the lack of causation, and the effect of our prior decision reversing and
rendering judgment in the underlying suit between Archer and her patient.

 Yet, our interpretation of the record and Archer's pleadings differs from that of Moss. 
We agree that under Texas law, a plaintiff cannot fracture a legal malpractice claim into
multiple causes of action. Aiken v. Hancock, 115 S.W.3d 26, 28 (Tex. App.-San Antonio
2003, pet. denied). We also acknowledge that the allegations of misdoing in Archer's live
pleading were somewhat spartan. Nonetheless, they easily can be divided into two
categories. The first concerns the quality of Moss' performance, e.g., his neglecting
matters, mis-evaluating the case, and omitting to communicate with his client. So
concerned, they can be viewed as claims involving legal malpractice. See id. at 28 (noting
that the thrust of a legal malpractice claim involves the adequacy of counsel's
representation). The second concerns a matter of divided loyalties, e.g., the pursuit of his
own pecuniary interests over the interests of his client. So focused, they can be viewed
as claims involving breached fiduciary duties. See Aiken v. Hancock, 115 S.W.3d at 28
(noting that claims of breached fiduciary duties involve conflicts of interest, self-dealing, the
use of confidential information, among other things). Given that her allegations can be so
classified, we cannot say that she impermissibly fractured one malpractice claim into
multiple causes of action. 

 Next, with regard to the malpractice claims, Moss attempted to defeat them via
summary judgment by alleging that they were negated by the reversal and rendition of the
judgment in the underlying suit between Archer and her patient. So too did he contend that
limitations, the lack of a sufficient causal relationship, and the want of any "reasonable
possibility of recovery under any state law claims" also defeated her causes of action. Also
alleged was that our reversal and rendition of the underlying judgment established that
Moss "conformed to the standards set by the legal profession." 

 Now, in granting summary judgment, the trial court specified no particular ground
upon which it relied. Thus, it was encumbent upon Archer to illustrate why none supported
the trial court's decision. Pruett v. City of Amarillo, 947 S.W.2d 718, 720 (Tex.
App.-Amarillo 1997, writ denied). Thus, for instance, she was obligated, on appeal, to
show why our reversal of the underlying judgment did not establish that Moss' conduct
conformed to the performance standards required of lawyers as a matter of law. Instead
of doing so, however, Archer simply stated, in her appellate brief, that Moss was obligated
to offer evidence illustrating that he complied with pertinent legal standards and did not do
so. Why our opinion reversing the underlying judgment, which opinion Moss attached to
his summary judgment motion, was not that evidence went unexplained. Nor did she
explain why that opinion and its effect failed to establish, as a matter of law, that Moss
complied with the legal standards governing his performance. And, in failing in those
respects, Archer did not negate the ground as basis for entering summary judgment upon
her malpractice claims. In short, Archer failed to carry her burden of proof on appeal viz
her allegation that the trial court erred in denying her malpractice claim.

 Left, however, are the claims founded upon Moss' purported divided loyalties. 
Furthermore, none of his summary judgment grounds can be read as attacking them. 
Again, as evinced by his summary judgment motion and accompanying brief, each one
was directed against Archer's legal malpractice claim, as opposed to her claims sounding
in breached fiduciary duties. So, because 1) we have held the allegations in Archer's live
pleading to fall within the realm of different causes of action, and 2) the grounds uttered
for summary judgment pertained simply to Archer's claims for malpractice, the trial court
erred in granting judgment upon those causes sounding in theories other than legal
malpractice.

 Accordingly, we reverse that portion of the summary judgment wherein the trial court
ordered that Archer take nothing upon her claim that Moss supposedly breached fiduciary
duties owed her due to his pursuit of his own pecuniary interest and remand that allegation
and cause of action to the trial court. In doing so, the court makes no comment as to the
viability of Archer's claim. In all other respects, the summary judgment is affirmed. 


 Brian Quinn

 Chief Justice


Reavis, J., concurs.
1. Medical Protective Insurance Services, Inc. was also sued. However, for purposes of this opinion,
both it and Medical Protective Company are referred to as and encompassed by the moniker MPC. 
2. This, in turn, leads us to answer the question of when "may [a Stowers claim] ultimately prove
unnecessary" while the underlying suit remains on appeal by saying that it must be when the insured is 
absolved of liability via a decision of the appellate court.