Marguerite HAMRIC, Appellant,

v.

KANSAS CITY SOUTHERN RAILWAY COMPANY, Southwestern Bell Telephone Company, the State of Texas and the Texas State Department of Highways and Public Transportation, Appellees.

No. 09 85 268 CV.

Court of Appeals of Texas, Beaumont.

Oct. 23, 1986.

Rehearing Denied Nov. 12, 1986.

Jim Richards, Houston, Kenneth C. Raney, Jr., Vinson & Elkins, Dallas, for appellant.

Daniel Flatten, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Timothy S. Guill, Asst. Atty. Gen., Highway Div., Austin, Mark Johnson, Houston, for appellees.

OPINION

BROOKSHIRE, Justice.

Appeal from a granting of a summary judgment in favor of Kansas City Southern Railway Company, Southwestern Bell Telephone Company, The State of Texas and The Texas State Department of Highways and Public Transportation. The Appellant is the surviving widow of Richard Paul Hamric, Sr., who was killed in an automobile collision on July 18, 1981. She brought suit for damages based on common law negligence and the Texas Tort Claims Act, TEX.REV.CIV.STAT.ANN. art. 6252–19 (Vernon 1970). [As of September 1, 1985 Civil Practice and Remedies Code section 101.001 et seq. (Vernon Supp.1985)]; the Wrongful Death Statute, TEX.REV.CIV. STAT.ANN. art. 4671 (Vernon 1970) [Effective September 1, 1985], Civil Practice and Remedies Code section 71.001 et seq. (Vernon Supp.1985) and the Texas Survival Statute being TEX.REV.CIV.STAT.ANN. art. 5525 (Vernon 1970) [codified Civil Practice and Remedies Code section 71.021 (Vernon Supp.1985)].

The district court held in substance that no one of the appellees owed any duty to Richard Hamric. The widow argued that each appellee owed a duty to warn Hamric or to remove a tall stand of Johnsongrass and other tall and thick weeds at the intersection in question, being F.M. 1136 and F.M. 1130 in Orange County. The widow's theory was that these tall and thick stands of weeds and Johnson grass obstructed the view of both the deceased and Avanelle Phelps, the driver of the second vehicle, as they approached the intersection.

Hamric was traveling north on F.M. 1136 as he approached the intersection of F.M. 1130. Ms. Phelps was traveling west on F.M. 1130. She said that, after stopping at a stop sign facing her on F.M. 1130, she attempted a left turn onto F.M. 1136 when her automobile struck the deceased's vehicle. The widow pleaded that the view of the intersection was obstructed by tall Johnson grass and other weeds and vegatation which had been allowed to grow tall on the property abutting both F.M. 1130 and F.M. 1136. The highway rights of way were alleged to contain tall Johnson grass and thick, tall, weeds. The Railway Company operates its trains across F.M. 1136 on tracks parallel to F.M. 1130. Southwestern Bell had an underground cable easement at the intersection. Basically, the widow states that each one of the appellees were negligent in failing to keep the intersection view and lookout thereof unobstructed for motorists. Both KCS and Southwestern Bell claimed that they simply owed no duty to Mr. Hamric because they were not responsible for the conditions which naturally existed upon their property or easements, being rural land owners or possessors.

The State of Texas and the Highway Department said the extent of their duty that was owed to the deceased motorist was the same duty which a licensor owes to a licensee on private property.

The deposition of Ms. Avanelle Phelps is in the record. She testified that there was grass growing along the sides of the road and on the shoulder. She said she stopped at the stop sign facing her on F.M. 1130. She was traveling westward and had driven on this road many times before. She knew about the stop sign facing her. She knew that she was to yield the right of way

which she interpreted as "to look and let others go by before you go." She characterized the condition at the intersection as being bad. After stopping, she eased forward. She said she looked *and could not see anything so she moved forward.* She said she did not see anything and she was going ahead "and there he was." Phelps said *she made two stops and looked both ways.* Hamric, traveling north on F.M. 1136, was in his lane of traffic—the lane nearest to Phelps—when the impact occurred. Phelps estimated Hamric's speed at about 40 to 45 miles per hour. Phelps said the grass that obstructed her vision of F.M. 1136 was the grass or weeds that existed to the right or near the railroad signal pole. She contended that if the weeds near the pole had been mowed that the tragedy would not have occurred.

Phelps testified:

"Q Now, clear up for me, if you will, what was the nature of the obstruction or what is it that you say interfered with your ability to see Mr. Hamric's car?

"A The grass.

"Q How?

"A When I pulled up to the stop sign I couldn't see for the grass there, so I pulled up further so that I would be able to see. So, just the grass.

"Q The grass, where on the diagram, using the diagram the other attorney used?

"A In between the stop sign and around to the shoulder of the road.

. . . .

"Q How much time do you think elapsed? How long did it take from the time you first stopped at that stop sign where you couldn't see through the grass until the collision?

"A Oh, about forty-five seconds, I guess. It wasn't very long at all. I don't know, forty-five seconds, I guess.

"Q Do you know anything else that might have contributed to this accident?

"A No, sir."

We hold this case should be governed by the rule that the owner or occupier of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of motorist using the highway as a means of passage and the owner or occupier is liable for injuries that proximately resulted from his negligent acts in this respect. *Atchison v. Texas and Pacific Railway Company,* 143 Tex. 466, 186 S.W.2d 228 (1945); *Skelly Oil Company v. Johnston,* 151 S.W.2d 863 (Tex.Civ.App.—Amarillo 1941, writ ref'd). We opine that this rule has been reaffirmed in *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981). In *Alamo, supra,* the Supreme Court unanimously held:

"The owner or occupant of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel. The owner or occupant is liable for any injury that proximately results from his negligence." (citations omitted).

In *Atchison v. Texas and Pacific Railway Company, supra,* we find:

"The trial court filed findings of fact and conclusions of law to the effect that the railway company negligently permitted grass, weeds and other vegetation to grow up and remain on its right of way in a highly combustible state; that respondent negligently set fire to the grass and weeds on its right of way which spread and caused smoke to drift over the highway; that each of these acts of negligence was a proximate cause of the injuries. . . ."

We perceive no substantial or meaningful difference in a driver's vision being obscured by smoke or by being obscured by tall Johnson grass, weeds, and vegetation. We reverse the judgments in favor of Kansas City Southern Railway Company and Southwestern Bell Telephone Company.

We conclude that the summary judgment granted favoring Texas and the Texas Highway Department was error. We agree the relevant part of the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.

CODE ANN. sec. 101.022 (Vernon 1986) generally provides that as to premises defects the unit of government shall owe a claimant only the duty owed by private persons to a licensee on private property. But there is an exception.

In *Lower Neches Valley Authority v. Murphy,* 536 S.W.2d 561 (Tex.1976), the court held:

> " . . . [A]n exception to this rule is that when the licensor does have knowledge of a dangerous condition, *and the licensee does not,* a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe. . . . . "

TEX.REV.CIV.STAT.ANN. art. 6674q–4 (Vernon 1977), places the duty upon the state to provide:

> "(a) For the efficient maintenance of all highways comprising the State System."

Hence, this duty is not merely a discretionary matter excluded from the Texas Torts Claim Act by TEX.REV.CIV.STAT.ANN. art. 6252–19 sec. 14(7) (Vernon 1970).

■ The widow's pleadings and the summary judgment proof bring her cause of action within the exception to the general rule governing licensors and licensees. *Sutton v. State Highway Department,* 549 S.W.2d 59 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). Assuredly, the proper maintenance of the state highways by the highway department is not a discretionary activity falling within the exclusion as set forth in section 14(7) of the Texas Tort Claims Act. *Sutton, supra,* held:

> "Article 6674q–4, Vernon's Tex.Civ.St., directly places the responsibility for the construction and 'the efficient maintenance of all highways comprising the State System' upon the State Highway Commission and the State Highway Department."

> (549 S.W.2d at 62)

*See, Stanford v. State Department of Highways and Public Transportation,* 635 S.W.2d 581 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

■ We decide that maintaining, efficiently, the rights of way of the State Highway System includes the mowing of grass and weeds so that tall Johnson grass, thick weeds, grass, and tall, thick, vegetation will not impair the view and lookout of motorists in a manner that jeopardizes or endangers their safety when approaching an intersection of highways. The duty is to exercise reasonable care.

■ In addition to the legal duty, we conclude that a material fact issue exists as to whether the state breached that duty. The continuous growth of the Johnson grass and weeds creates an increasingly— not static—dangerous condition, increasingly jeopardizing the safety of persons using the highway for passage. *See, Jezek v. City of Midland,* 605 S.W.2d 544 (Tex. 1980). TEX.REV.CIV.STAT.ANN. art. 6701d sec. 13(a) (Vernon 1977), contains the definition of a highway as:

> "The *entire width between the boundary lines* of every way publicly maintained when *any part thereof is open to the use of the public for purposes of vehicular travel.*" (Emphasis added)

This statutory definition, coupled with TEX.REV.CIV.STAT.ANN. art. 6674q–4 (Vernon 1977), creates a duty to also efficiently maintain the shoulders of the highways including, as here, the mowing of tall, thick, vegetation.

■ We think the building of, and construction of, a railroad right-of-way is, in essence, an artificial condition. In our case, this artificial condition was adjacent to public highways. Certainly, the railroad right-of-way was not, and is not, a natural condition of the land in its original, undisturbed state—the land had been changed. *Alamo National Bank, supra.* The dissent places major reliance on *Jezek, supra.* The rationale of that decision was that the court did not desire to impose "an inponderable responsibility upon counties." Nor do we. Orange County is not a party in this case. Specifically, we do not, by this decision, place any duty or responsibility on Orange County or any county. Generally, we acknowledge that counties in our state

do not have proprietary functions that would give rise to a duty or responsibility in this area of law. The dissent concedes that "[i]t is readily apparent that *article 6674q–4* places the duty upon the state to maintain the highways."

We note that TEX.REV.CIV.STAT. art. 6674q–2 (Vernon Supp.1986), in pertinent part, provides:

"By the expression 'roads' or 'road' as used in this Act, is meant roads, *road beds, bridges, and culverts.*" (Emphasis added)

We further note that TEX.REV.CIV. STAT.ANN. art. 6673c, sec. 1 (Vernon 1977) authorizes the State Highway Commission to designate any county road in the state as a farm-to-market road for the purposes of construction, reconstruction and maintenance if the Commissioners Court of that county waives any rights that such county may have for participation by the state in any indebtedness incurred by the county in the original construction of such road. It is crystal clear, under this record, that both roads involved are farm-to-market roads.

TEX.REV.CIV.STAT.ANN. art. 6674a (Vernon 1977) states that the term "highway" shall include any public road or thoroughfare or section thereof and any bridge, culvert or other necessary structure appertaining thereto.

Under RESTATEMENT (SECOND) OF TORTS Sec. 368 (1965), it is enough to subject the possessor of the land adjacent to a highway to liability when that possessor knows, or should know, that the condition of his land has become unreasonably dangerous. If the same condition has become unreasonably dangerous, it is not necessary that it constituted an unreasonable risk when first constructed or created.

RESTATEMENT (SECOND) OF TORTS Sec. 363, comment b (1965), reads, in relevant part:

"b. *Meaning of 'natural condition of land.'* 'Natural condition of the land' is used to indicate that the condition of land has not been changed by any act of a human being...."

The judgments are reversed and the causes remanded for trial against the three Appellees.

REVERSED AND REMANDED.

BURGESS, Justice, dissenting.

I respectfully dissent. I would affirm the granting of the summary judgment. The majority relies, in part, on a quotation from *Alamo National Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981). This case stands for an excellent proposition of law, however, it is not on point. *Alamo, supra,* dealt with the demolition of a building next to a roadway and its rationale looks to the RESTATEMENT (SECOND) OF TORTS, secs. 368, 414A (1965). These sections speak to the creation of artificial conditions on or adjacent to highways.

The section of the restatement dealing with natural conditions, section 363, establishes a general rule of nonliability for a land owner for physical harm caused to others outside of his land by a natural condition of the land. Further, in *Jezek v. City of Midland*, 605 S.W.2d 544, 547 (Tex. 1980), the court, stated:

The rationale behind these cases is best stated in *Barton*. 'To allow it [recovery] would be to hold, literally, that thousands of county road intersections are inherently dangerous. To so hold would impose an imponderable responsibility upon counties.' *Barton v. King County*, 18 Wash.2d 573, 139 P.2d 1019, 1021 (1943).

We recognize the problem of imposing this type of duty on counties. It would be a rigorous burden indeed for a rural county in a state such as Texas to police and remove vegetation from roads when they cause visual obstruction. This, however, is not the case before us. Our case is based upon a theory of proprietary function of government. Counties in Texas have no proprietary functions and thus would have no duty in this area. (citation omitted)

Therefore, the granting of the summary judgment in favor of Kansas City Southern

Railway and Southwestern Bell Telephone (Bell) was proper. There is an additional reason that the granting of the summary judgment in favor of Bell was proper. It was undisputed that Bell only had a subsurface easement. Surely, a subsurface easement holder has no duty to maintain the surface.

As to the duty of the state to maintain the rights-of-way, the majority misplaces their reliance on the definition of highway in *article 6701d sec. 13(a), supra.* It is readily apparent that *article 6674q–4* places the duty upon the state to maintain the highways. This does not, under the definition of roads in TEX.REV.CIV.STAT. ANN. art. 6674q–2 (Vernon 1977), place a duty on the state to maintain or mow the rights-of-way. If the legislature desires to place such a duty upon the state, they may do so. Until then, no such duty exists. I would affirm the judgment of the trial court. For the reasons stated, I respectfully dissent.