COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| JAMES PITTS, | | No. 08-09-00297-CV |
| | § | |
| Appellant | | Appeal from the |
| | § | |
| v. | | 109th Judicial District Court |
| | § | |
| | | of Winkler County, Texas |
| WINKLER COUNTY, TEXAS, | § | |
| | | (TC# 15,139) |
| Appellee. | § | |

## **O P I N I O N**

This appeal arises from a car accident involving James Pitts and Charley Willhelm in Winkler County, Texas. The accident occurred at the intersection of State Highway 115 and County Road 201. Pitts was driving south on the state highway as Willhelm was driving east on the county road. Willhelm's car failed to stop at a stop sign and crashed into Pitts's car. Pitts sued Winkler County under the Texas Tort Claims Act (TTCA), alleging that Willhelm failed to stop because the county road had a large oil spill that the County covered with dirt, making the oil undetectable. Pitts asserts that the dirt and oil mixture constituted a premise defect for which the County has no governmental immunity. The County moved for summary judgment, arguing that its governmental immunity has not been waived for several reasons. The trial court granted the motion without specifying the grounds it found meritorious.

John Henderson was the County's foreman in charge of maintaining the roads in the precinct where the accident occurred. He testified by deposition that there is a lot of oil and gas activity in the area and it is not unusual for a truck carrying petroleum to "slosh out a little oil

every now and then." Two days before the accident, his boss, RobbieWolf, instructed him to cover an oil spill on County Road 201. Henderson indicated that the spill was about twenty-feet long and that it covered almost the entire lane. Using a front-end loader, he "slammed" on the brakes to test the slickness of the area. He "slid a little," so he loaded some dirt from the bar ditch and put it over the oil. He did another test after applying the dirt, and the front-end loader "stopped immediately without skidding." He estimated that the front-end loader weighs between 20,000 and 25,000 pounds, whereas a passenger car weighs between 4,000 and 5,200 pounds. The test area began at the back of the oil spill and continued for about ten-to-fifteen feet. The record does not reflect how much speed Henderson was able to attain in that length of space. Henderson went back and checked the area to make sure there was no "bleed through" later that day and again the next day. He found that the dirt concealed the oil, so that a motorist would not know that there was oil on the road.

Wolf testified by affidavit and by deposition. In his affidavit, he stated that he is the county commissioner for the precinct where the accident occurred. Upon being notified of an oil spill on County Road 201, he sent employees to cover the spill with dirt because "[i]t is the policy and practice of the County to cover oil spills on the County's roads with dirt." Before the accident, Wolf drove by the area of the spill and observed that it had been covered with dirt. He did not receive any complaints about the road after the spill was covered. In his deposition, Wolf testified, "If I see dirt on the road around here, I don't think nothing about it." He would not know whether there was oil beneath the dirt.

Pitts testified by deposition that the accident occurred at about 2:30 in the afternoon on a "pretty nice day." Traffic was light, and he did not see any other traffic near the intersection. He

was going about sixty-five miles per hour in a seventy-mile zone.  As he approached the intersection, he saw "the car coming that way.  And it looked like he was stopping, then . . . I turned my vision back towards the highway there.  Then all of a sudden, I felt it hit me."  He testified that Willhelm's car appeared to be slowing down as it approached the intersection.  Pitts did not see any oil on the road.

In his deposition, Willhelm testified that he was going sixty miles per hour before he approached the stop sign.  Describing how the accident happened, he stated:  "I pulled up to the stop sign and there was some dirt on the road, and I pulled up to it and it was like my brakes just went out and I slid into the road."  He "pressed on the brakes and everything was fine and then [he] hit the dirt and . . . started sliding."  Although he saw the dirt on the road, he did not know why it was there.  As far as he knew, it "could have been . . . just blown by the breeze."  According to Willhelm, Pitts was not speeding and did not "do anything wrong."

Willhelm's father went to look at the scene of the accident the day after it occurred.  He saw "dirt . . . mixed with an oily kind of stuff."  The dirty area was about sixty-five feet long.

The TTCA provides a limited waiver of governmental immunity for injuries caused by premise defects.  *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.022(a)(West 2011).  Governmental immunity from suit deprives a court of subject-matter jurisdiction.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-25 (Tex. 2004).  The absence of subject-matter jurisdiction may be raised in a plea to the jurisdiction or in a motion for summary judgment.  *State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009).

Here, the County raised the jurisdictional issue in a summary judgment motion.  The motion cites the standards for both a traditional and a no-evidence summary judgment, but does

not clearly separate the arguments for the two types of summary judgments. The Texas Supreme Court has noted that a "better practice" is to file separate motions, or at least to include headings that clearly delineate and segregate the two bases for summary judgment. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). The court, however, does not require litigants to follow this practice. *Id*. On appeal, the County only attempts to uphold the summary judgment on the traditional basis. Its brief cites Rule 166a(c) and provides the standard of review for a plea to the jurisdiction that challenges the existence of jurisdictional facts. *See* TEX.R.APP.P. 166a(c) (setting out the traditional summary judgment procedure); *Miranda*, 133 S.W.3d at 227-28 (holding that when a plea to the jurisdiction challenges the existence of jurisdictional facts, courts should follow the traditional summary judgment procedure). Nevertheless, because the summary judgment motion raised both traditional and no-evidence bases for summary judgment, we will affirm if the summary judgment can be sustained on either basis. *Viasana v. Ward County*, 296 S.W.3d 652, 653-54 (Tex.App.--El Paso 2009, no pet.).

When reviewing a summary judgment, we always view the evidence in the light most favorable to the non-movant. We consider all evidence favorable to the non-movant to be true, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Arellono v. Americanos USA, LLC*, 334 S.W.3d 326, 330 (Tex.App.--El Paso 2010, no pet.). For a no-evidence summary judgment, the movant must only specify which elements of the plaintiff's claim lack evidentiary support. *Id*. The burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact regarding each challenged element. *Id*. To meet this burden, the non-movant must produce more than a scintilla of evidence regarding the challenged elements. *Id*. For a traditional summary judgment, the movant has the burden of

showing that there is no genuine issue of material fact by conclusively disproving at least one element of the non-movant's causes of action or by conclusively proving all of the elements of an affirmative defense. *Id*.

The County raised several grounds in its summary judgment motion, and Pitts attacks all of those grounds on appeal.[1] We will review the grounds *de novo* and will affirm if any ground is meritorious. *Viasana*, 296 S.W.3d at 653-54; *New Wave Techs., Inc. v. Legacy Bank of Texas*, 281 S.W.3d 99, 100 (Tex.App.--El Paso 2008, pet. denied). Ordinarily, we consider no-evidence grounds first, because if a plaintiff cannot produce more than a scintilla of evidence, then there is no need to analyze whether the defendant satisfied the more onerous traditional summary judgment burden. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). It is difficult to follow that approach here because the County argued the two bases together and some of its grounds raise issues of law. To the extent possible, and where applicable, we will consider whether Pitts satisfied his no-evidence burden before moving on to the County's traditional burden.

A governmental unit's liability for premise defects is limited to the duty that a landowner owes to a licensee on private property. *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008). Thus, to establish the County's liability for his injuries, Pitts must prove five elements: (1) that a condition of the road created an unreasonable risk of harm; (2) that the County had actual knowledge of the condition; (3) that he did not have actual knowledge of the

---

[1] Pitts's brief lists seven issues on appeal, including an issue generally asserting that the trial court erred in granting summary judgment and several issues specifically challenging the grounds raised by the County. But the remainder of the brief is not organized around the listed issues. Consequently, we have chosen to follow the arrangement of the issues in the summary judgment motion.

condition; (4) that the County failed to exercise ordinary care to protect him from danger; and (5) that this failure proximately caused his injury. *See State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992); *see also County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002)("A property possessor . . . must use ordinary care either to warn a licensee of a condition that presents an unreasonable risk of harm of which the possessor is actually aware and the licensee is not, or to make the condition reasonably safe.").

In its summary judgment motion and on appeal, the County argues that Pitts must establish two other elements in addition to the ones listed above. First, it argues that Pitts must prove that it owned, occupied, or controlled the premises where the accident happened. The County insists that it cannot be liable to Pitts because he was traveling on a state highway, rather than a county road, when the accident happened.[2] The County relies on *County of Cameron v. Brown*. In *Brown*, the plaintiffs' decedent was in an accident on a causeway that was owned by the State but maintained by Cameron County. 80 S.W.3d at 553. Cameron County argued that it was not liable because it neither owned nor exercised exclusive control over the causeway. *Id.* at 556. In this context, the Texas Supreme Court stated that a plaintiff in a premise defect case must prove that "the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred." *Brown*, 80 S.W.3d at 554.

The dispute in *Brown* centered around which entity controlled the defective premises. In this case, it is undisputed that the County controlled the premises that are alleged to be defective.

---

[2] According to the County, the two vehicles collided while Pitts's car was on the state highway. The evidence it cites does not conclusively establish this fact. Based on the accident report, it appears that the accident occurred in the intersection. For purposes of argument, we will assume that the County did not own or control the place where the accident occurred.

The issue is whether the County can be held liable for an accident that was caused by a premise defect on its property if the accident occurred on an abutting road not owned or controlled by the County. *Brown* did not address this issue.

It is well settled that the owner of land abutting a road has a duty to exercise reasonable care not to endanger the safety of people traveling on the road. *See, e.g., Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). Because a private person could be liable under these circumstances, the County may be liable as well, but its liability is limited to the duty owed to a licensee. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 101.021, 101.022(a); *see also Hamric v. Kansas City S. Ry. Co.*, 718 S.W.2d 916, 917, 919-20 (Tex.App.--Beaumont 1986, writ ref'd n.r.e.)(holding that the State could be liable for a car accident because tall vegetation on a railroad right of way, which the State had a duty to maintain, obstructed the view at an intersection between two farm-to-market roads).

Second, the County contends that proving "that the condition of the property was a premises defect" is an element of a premise defect claim. The County further contends that whether a condition is a premise defect is a question of law. The case it cites for these contentions states, "Determining whether a condition is a special defect or an ordinary premise defect is a question of law for the court." *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997). The case was simply distinguishing between two types of premise defects--special and ordinary.[3] The County has cited no authority holding that proof that a condition is a premise defect is a separate element of a premise defect claim.

---

[3] Although Pitts asserted in the trial court that the oil-dirt mixture was a special defect, he has abandoned that issue on appeal.

Rather than being an element, "premise defect" is a theory of recovery. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010)("As to landowners, we have recognized negligent-activity and premises-liability theories of liability."); *State v. Estate of Horton*, 4 S.W.3d 53, 54 (Tex.App.--Tyler 1999, no pet.)("A claim which relates to a 'defect' in the condition of real property is a premises defect claim."). The theory applies to any claim arising out of a condition of real property. *See City of San Antonio v. Butler*, 131 S.W.3d 170, 179 (Tex.App.--San Antonio 2004, pet. denied)("The TTCA waives immunity for claims arising out of a condition of real property, in other words, a premises defect."). In distinguishing between negligent activity and premise defect claims, courts have held that real property cannot be deemed to have caused an injury if the property did no more than furnish the condition that made the injury possible. *See id*. at 180. To make a claim based on a condition of real property, a plaintiff must complain of something defective or inadequate about the property itself. *Id*. at 179. "A 'defect' is defined as an imperfection, shortcoming, or want of something necessary for completion." *Id*. [Internal quotation marks omitted]. Because Pitts is complaining about a condition of real property (the oil-dirt mixture on the road), he has raised a premise defect claim.

The County asserts that Pitts has cited no authority for the proposition that a dirt-covered oil spill is a premise defect, he has provided no expert testimony to that effect, and he submitted no evidence that the condition of the road was so inadequate or defective that it would have prevented a vehicle from stopping if the vehicle was traveling at a reasonable speed. The County further asserts that it conclusively established that the condition of the road was reasonably safe. These assertions relate to the first element of a premise defect claim--an element that is an issue of fact, not law, and an issue we turn to next.

The first element of a premise defect claim requires the plaintiff to prove that a condition of property is unreasonably dangerous. A condition is unreasonably dangerous if it presents an unreasonable risk of harm. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007). "A condition poses an unreasonable risk of harm for premises-defect purposes when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Brown*, 80 S.W.3d at 556 [Internal quotation marks omitted]. Whether a condition is unreasonably dangerous is ordinarily a fact question. *Christus Health Southeast Tex. v. Wilson*, 305 S.W.3d 392, 397 (Tex.App.--Eastland 2010, no pet.); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 646 (Tex.App.-- Houston [1st Dist.] 2005, pet. denied).

Viewed in the light most favorable to Pitts, the summary judgment evidence shows that a sixty-five-feet-long and one-lane-wide oil-dirt mixture immediately preceded an intersection in a seventy-mile speed zone. Both drivers were operating their cars safely within the speed limit in good weather. Nevertheless, Willhelm was unable to stop after applying his brakes. The dirt disguised the oil spill and there was no way for Willhelm to know that the area was slick as he approached the intersection. To establish foreseeability, it is not necessary to show that the exact sequence of events was foreseeable; "only the general danger must be foreseeable." *Brown*, 80 S.W.3d at 556. Under these circumstances, a jury could conclude that the accident or a similar event was likely. *See id.* (rejecting argument that a reasonably prudent person could not foresee that a driver could lose control of his vehicle as a result of failed causeway lighting and then be struck by another vehicle while exiting the wreckage). Furthermore, common knowledge, not specialized knowledge, is all that is needed to establish that an oily mixture on a road would be

-9-

slick and could interfere with a driver's ability to stop. *See* TEX.R.EVID. 702 (indicting that expert testimony is appropriate when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

The County points out that there was no evidence that dirt-covered oil spills had caused previous accidents or had been the subject of complaints. Although such evidence would be probative, it is not required. *See Hall*, 177 S.W.3d at 645. *But see Brinson Ford*, 228 S.W.3d at 163 (holding that a ramp did not pose an unreasonable risk of harm as a matter of law because it not only met applicable safety standards but contained additional safety features, and there were no reports of injuries or complaints for the previous ten years).

The County also argues that it made the area reasonably safe as a matter of law by putting dirt on the oil and by testing to see that the front-end loader could come to a stop in the area after application of the dirt. The fact that the County attempted to cure the oil spill by covering it with dirt does not conclusively prove that the oil-dirt mixture itself was reasonably safe, especially in light of the facts described above. And the performance of a 25,000 pound front-end loader does not necessarily equal that of an ordinary passenger car on a slick road.

The second element of a premise defect claim requires the plaintiff to prove that the defendant had actual knowledge of the unreasonably dangerous condition. To have actual knowledge, a landowner must know that the dangerous condition exists at the time of the accident. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008)(per curiam). Actual knowledge must be distinguished from constructive knowledge, which can be established by facts or inferences that a dangerous condition could develop over time. *Id*. "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of

harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Aguilar*, 251 S.W.3d at 513. This does not mean that a plaintiff must produce reports of prior accidents to establish actual knowledge. *See City of Irving v. Seppy*, 301 S.W.3d 435, 444 (Tex.App.--Dallas 2009, no pet.). Actual knowledge of an unreasonably dangerous condition can sometimes be proven through circumstantial evidence. *Id*. "Circumstantial evidence establishes actual knowledge only when it either directly or by reasonable inference supports that conclusion." *Stewart*, 249 S.W.3d at 415 [Internal quotation marks omitted]. Proof that a landowner created the dangerous condition may support an inference of knowledge. *Keetch v. Kroger, Co.*, 845 S.W.2d 262, 265 (Tex. 1992). However, there must be some evidence from which a jury could infer that the landowner not only knew about the condition, but also that it created an unreasonable risk of harm. *See Aguilar*, 251 S.W.3d at 514.

In this case, it is undisputed that the County knew about the oil spill. But Pitts does not contend that the oil spill alone was the premise defect; he contends that the dangerous condition was the oil spill combined with the dirt on top of it. It is also undisputed that the County knew about this condition because Henderson, a County employee, put the dirt on the oil. The dispute centers on whether the County knew that the dirt-covered oil spill was dangerous.

Pitts contends that the County had actual knowledge because it created the dangerous condition by covering the oil spill with dirt. On the other hand, the County argues that it did not know that the condition of the road was dangerous after Henderson covered the spill because his front-end loader did not slide after the dirt was applied. In addition, Henderson claims that he checked the area two times and saw that no oil was bleeding through the dirt. Wolf also

-11-

observed that the area was covered with dirt. Moreover, Wolf testified that he did not receive any complaints regarding the condition of the road after the spill was covered with dirt. The County argues that this testimony conclusively establishes that it did not receive any such complaints.

It is important to note that the underlying condition at issue here--an oil spill--is an obvious hazard. It was recognized as such by the County and by County employees Henderson and Wolf. This fact distinguishes this case from cases involving innocuous objects. *See, e.g., Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115, 117 (Tex. 2010)(no actual knowledge that metal chain across service driveway and behind an eight-foot-wide orange and white barricade was a dangerous condition); *Aguilar*, 251 S.W.3d at 514 (no actual knowledge that location of water hose created a dangerous condition). Viewed in the light most favorable to Pitts, the evidence suggests that the County contributed to the dangerous condition by concealing the oil with dirt. Henderson acknowledged that an oil spill can make it difficult for a car to stop and he admitted that a motorist would not know that there was oil underneath the dirt and that no warning of the dangerous condition was given. This raises a fact question as to the County's actual knowledge that the road was dangerous. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 60, at 417 (5th ed. 1984)("The duty arises only when the occupier has actual knowledge of the risk, although this may be shown by circumstantial evidence, and *he is held to the standard of a reasonable person in realizing the significance of what he has discovered*.")[Emphasis added].[4]

---

[4] The Texas Supreme Court has cited this section of this hornbook in discussing a licensee's knowledge in a TTCA case. *See Brown*, 80 S.W.3d at 557.

It is true that there is no evidence of complaints about the road after the dirt was applied, but this lack of evidence is not dispositive. Moreover, the County did not, as it claims, conclusively establish a lack of complaints. Wolf merely stated that *he* did not receive any complaints about the condition of the road after the spill was covered with dirt. Lack of knowledge on the part of one employee does not conclusively establish lack of knowledge on the part of the County. *See Sifford v. Santa Rosa Med. Ctr.*, 524 S.W.2d 559, 563 (Tex.Civ.App.-- San Antonio 1975, no writ). There is no evidence as to whether other county commissioners or employees received complaints, nor is there evidence that any such complaints would necessarily have been forwarded to Wolf. Wolf could not recall who told him about the oil spill, or even whether it was a governmental agency or a citizen. Wolf's deposition also demonstrates that the County did not keep records about roads. Pitts's attorney had asked for any documentation regarding work done to County Road 201. No documents were provided because the County did not require such documentation at the time of the accident, although it now does.

The County does not challenge the third element of a premise defect claim--that Pitts lacked actual knowledge of the dangerous condition. The fourth element requires a plaintiff to prove that the defendant failed to exercise ordinary care to protect the plaintiff from danger. The County's arguments regarding this element are essentially the same as its arguments regarding the second element. It relies on the evidence that it covered the oil spill with dirt and that it tested and checked the roadway thereafter. The County ignores the fact that the dirt concealed the oil. The question of the County's negligence is a quintessential jury question.

The last element of a premise defect claim requires the plaintiff to prove that the defendant's negligence proximately caused his injuries. The County contends that Pitts's injuries

-13-

were caused by Willhelm running the stop sign and colliding with Pitts. We have rejected a similar argument in the past. *See City of Midland v. Sullivan*, 33 S.W.3d 1 (Tex.App.--El Paso 2000, pet. dism'd w.o.j.). In *Sullivan*, a high school student was struck by a vehicle as he walked through a school crosswalk. *Id*. at 5. His parents sued the city, claiming that the crosswalk was not clearly marked. *Id*. at 5-6. The city argued that its immunity was not waived because the school zone did not directly cause the student's injuries; it merely furnished the condition that made the student's injuries possible. *Id*. at 8. We rejected this argument, noting that proximate, not direct, causation is the applicable standard. *Id*. at 8-9. The defective crosswalk was a substantial factor in bringing about the student's injuries and was not so geographically or temporally distant from the accident as to negate legal causation. *Id*. at 9. The same is true here. The summary judgment evidence suggests that the dirt and oil mixture was at least a substantial factor in bringing about Pitts's injuries.

We conclude that a fact issue exists as to all of the challenged elements of Pitts's premise defect claim. But the County makes one final argument as to why its immunity has not been waived. The County argues that its decision to cover the oil spill with dirt falls within the discretionary function exception in the TTCA.

The discretionary function exception preserves the government's immunity for policy decisions. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.056; *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007). Determining whether the exception applies is an issue of law. *Id*.

In his affidavit, Wolf stated, "It is the policy and practice of the County to cover oil spills on the County's roads with dirt." Consequently, the County argues that the discretionary

-14-

function exception applies here. As Pitts argues, "if the County's theory were carried to its logical conclusion, then a governmental entity that has a policy of fixing potholes with asphalt, or cleaning soda spills with mops . . . could never be liable since it would have a policy addressing the dangerous condition." Justice Hecht has expressed a similar sentiment. He has noted, "If the government is immune from liability for all policy decisions, it could minimize its liability by making everything policy. The government would be encouraged to make policy on every silly subject imaginable, and the [TTCA's] discretionary function exception would swallow most of the waiver." *Id*. at 661 (Hecht, J., concurring).

In *Flynn*, the Texas Supreme Court stated that there are two tests for determining whether the discretionary function exception applies. The first distinguishes between policy-level decisions, which are immune, and operational-level decisions, for which there is no immunity. *Id*. at 657. The second test distinguishes between "the design of public works, for which there is immunity, from their maintenance, for which there is not immunity." *Id*. Although the court has set forth the two tests, it has not expressly told us when to apply which test. In *Flynn*, the court seemed to apply both tests. The court of appeals had held that a university's decision to have an irrigation system was a policy decision for which immunity was preserved, but that the plaintiff's complaint about the decision to operate the irrigation system over a trail during peak periods of public use was a complaint regarding negligent implementation of a policy decision. *Id*. In upholding this determination, the supreme court stated, "The court of appeals correctly concluded that the decisions here concerning when and where the water was to spray were operational- or maintenance-level decisions, rather than policy formulation." *Id*. at 658.

The County argues that the first test applies here. To establish that this test should apply,

the County must first explain why cleaning an oil spill, a function that certainly seems like maintenance under the common understanding of the term, does not in fact constitute maintenance. In its brief, the County states, "It is clearly established law, and the County does not dispute, that governmental units at all levels are required to maintain their streets, roads and highways in accordance with how they were designed and constructed, and that this kind of maintenance is not discretionary." The County also seems to concede that fixing a pothole is maintenance. But it suggests that there is a legal distinction between fixing a pothole and treating an oil spill. The County states that there is an "important distinction between a decision regarding how to treat a foreign substance on the surface of the roadway, which has nothing to do with maintaining the roadway's design, from a decision regarding the maintenance of the infrastructure of the roadway itself as it was originally designed. "Although the County asserts that this is an important distinction, it fails to explain why the distinction is important, and the explanation is not apparent to us. Both situations involve maintaining the road in its intended condition, just as replacing a broken tile and cleaning a soda spill both constitute maintenance of a floor in its proper condition. *See Tex. Dep't of Transp. v. Arzate*, 159 S.W.3d 188, 192 (Tex.App.--El Paso 2004, no pet.)("Maintenance is the preservation of existing infrastructure.").

Even if the discretionary function exception could immunize the decision to cover oil spills with dirt, the evidence only establishes that the County had a blanket policy of covering oil spills with dirt. There is nothing to suggest that the County's policy specified how to apply the dirt or how much to use. Thus, even under the County's theory, the actual implementation of the policy by Henderson in this case would not fall within the discretionary function exception.

All of Pitts's issues are sustained. The judgment of the trial court is reversed, and the

-16-

cause is remanded for trial.


September 21, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.