

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00037-CV

**JAMES NICHOLS, MELISSA NICHOLS,
MARTHA MOORE, AND EDWARD NICHOLS,
INDIVIDUALLY AND AS HEIRS OF THE
ESTATE OF MELODY NICHOLS,**

                                                            **Appellants**

 **v.**

**STEVE MCKINNEY,**

                                                            **Appellee**

**From the 40th District Court
Ellis County, Texas
Trial Court No. 89372**

## O P I N I O N

James Nichols, Melissa Nichols, Martha Moore, and Edward Nichols, individually and as the heirs of the Estate of Melody Nichols ('the heirs") sued Steven McKinney for his negligent acts or omissions which they alleged resulted in the death of their sister, Melody Nichols. McKinney moved for summary judgment which the trial court granted. Because the trial court erred in granting summary judgment on some of the heirs's claims, the trial court's judgment is reversed and remanded in part and affirmed in part.

BACKGROUND

In May of 2013, Melody was attacked by a swarm of bees after she parked her riding lawnmower on her property between her residence and McKinney's garage. The bees were alleged to have come from a hive in the wall of McKinney's garage. Melody ran inside her house where, within a few minutes, she lost consciousness. Emergency personnel found Melody unresponsive and were unable to resuscitate her. She was transported to a hospital where she was resuscitated and ultimately placed on life support. Approximately three months later, Melody died.

The heirs sued McKinney for negligence, nuisance,[1] negligence *per se*, nuisance *per se*, and negligent undertaking. They also brought a bystander claim and requested damages. McKinney moved for summary judgment on all the heirs's claims, asserting that McKinney owed no duty to Melody, which, his argument continued, would defeat all of the heirs's claims because the claims sounded in negligence. McKinney asserted in the alternative that should the trial court find McKinney owed a duty to Melody, Melody did not suffer conscious physical pain and or mental anguish which would defeat the heirs's survival claim. McKinney also asserted in his motion for summary judgment that he did not violate a state statute or municipal ordinance which, he argued, would defeat the heirs's negligence *per se* and nuisance *per se* claims. After reviewing the motion and

---

[1] We pause here to note that Justice Boyd has engaged in an exhaustive analysis of the law of "nuisance" in a case decided and issued after the trial court's decision in this proceeding and after the heirs's brief was filed. In that opinion, Justice Boyd went to great lengths to explain that nuisance is not a cause of action, but a legal injury. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 588 (Tex. 2016). However, the parties have discussed nuisance as a type of claim. We will discuss this difference in further detail in the relevant subdivision of this opinion.

the heirs's response and after a hearing, the trial court granted McKinney's motion.

## SUMMARY JUDGMENT

In four issues, the heirs contend the trial court erred in granting McKinney's motion for summary judgment on the heirs's claims for negligence, negligence *per se*, nuisance,[2] and negligent undertaking, and on the heirs's request for damages.[3]

We review a grant of a motion for summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015); *Williams v. Parker*, 472 S.W.3d 467, 469 (Tex. App.—Waco 2015, no pet.). In a traditional motion for summary judgment, as was filed by McKinney, a movant must state specific grounds; and a defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of an affirmative defense is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Id.* We cannot "read between the lines," infer or glean from the pleadings or the proof any grounds for granting the summary judgment other than those grounds expressly set forth before the trial court in the motion for summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993). *See also Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex. 1998) ("[d]efendants' motions for summary judgment argued only that plaintiffs failed to state a cognizable claim, the trial court's judgment can be upheld, if at all, only on that ground."). Once a defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present

---

[2] The heirs discussed their nuisance claim within their discussion of why the trial court erred in granting McKinney's motion for summary judgment on the heirs's negligence *per se* claim.

[3] The heirs do not raise an issue regarding the trial court's summary judgment on the nuisance *per se* claim or the bystander claim. Thus, we will not review the summary judgment as to those claims.

evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

**COMMON LAW DUTY**

We first decide whether McKinney owed a common law duty to Melody to protect her from the acts of indigenous wild bees which were alleged to have come from McKinney's property and attacked Melody on her property. McKinney asserts that the doctrine of *ferae naturae* precludes any duty to Melody.

To prevail on a negligence cause of action, a plaintiff is required to establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *See Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

In Texas, case law has established that a landowner cannot be held liable for the acts of indigenous wild animals (animals *ferae naturae*) occurring on his or her property unless the landowner has actually reduced the wild animals to possession or control or introduced a non-indigenous animal into the area. *Nicholson v. Smith*, 986 S.W.2d 54, 60 (Tex. App.—San Antonio 1999, no writ); *Gowen v. Willenborg*, 366 S.W.2d 695, 697 (Tex. App.—Houston [1st Dist.] 1963, writ ref'd n.r.e.). Courts have applied this doctrine to negate the existence of a duty in premises liability cases where the act of the wild animal occurred on the defendant's property. *See id. See also Gamble v. Peyton*, 182 S.W.3d 1 (Tex. App.—Beaumont 2005, no pet.); *Overstreet v. Gibson Prod. Co.*, 558 S.W.2d 58 (Tex. App.—

San Antonio 1977, writ ref'd n.r.e.). Courts have yet to apply the doctrine in a general negligence case where the act occurred somewhere other than on the defendant's property.[4]

McKinney argues there is no difference between the duty owed in a premises liability case and a common law negligence case; and thus, the Texas *ferae naturae* cases control the duty question here. We disagree with McKinney's argument. Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff in relation to the plaintiff's presence on the defendant's property at the time the incident occurred. *See W. Invs., Inc.,* 162 S.W.3d at 550. Thus, negligence and premises liability involve closely related but distinct duty analyses. *Id.*

There is no Texas case authority that we have been cited to, or that we have found, regarding whether a defendant property owner has a common law duty to protect a plaintiff from the acts of wild indigenous animals which originate on the defendant's property but cause injury to the plaintiff on the plaintiff's property or elsewhere. Thus, when deciding whether to create and impose such a duty, we must consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). *See also Bird v. W.C.W.*, 868

---

[4] This Court's opinion in *Brantley v. Oak Grove Power Co. LLC*, No. 10-12-00135-CV, 2012 Tex. App. Lexis 9888 (Tex. App.—Waco Nov. 29, 2012, no pet.) (mem. op.), appears to apply the doctrine to a general negligence case but where the act occurred *on* the defendant's property.

S.W.2d 767, 769 (Tex. 1994). Before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim. *Greater Hous. Transp. Co.*, 801 S.W.2d at 526. Absent such a showing, a defendant is absolved of liability. *Id.*

The heirs assert that Melody's injury was the kind of foreseeable harm caused by bees. The fact that someone may be stung by bees which take up residence on another person's property is certainly not an unforeseeable or even unlikely occurrence. However, foreseeability alone is not a sufficient basis for creating a duty. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994). We must consider the other factors as well.

The magnitude of the duty the heirs seek to impose on the property owner would be substantial; not just on McKinney but on all property owners—from those that own only a structure with no land, to those that own small residential properties, to those that own any, to many, acres of land. To avoid exposure to liability, it would require every property owner to constantly survey their property and purge the property of any and every wild animal, reptile, mammal, or insect, residing there, especially if the animal takes up residence in anything the property owner has on his property, such as a wood pile, a stock trailer, a pond, or any number of things, for fear the wild animals may leave the property and injure a person somewhere else. This is too much of a burden to impose on every property owner. *See e.g. SmithKline Beecham Corp. v. Doe*, 903 S. W.2d 347, 353 (Tex. 1995) (duty to inform each test subject not only of the possible effect of poppy seeds but of all possible causes of positive results other than using drugs is a substantial burden; therefore, no duty); *Bird v. W.C.W.*, 868 S. W.2d 767, 769 (Tex. 1994) (duty to protect the

public from fatigued employees would impose a substantial burden on employers; therefore, no duty).

The heirs cite several cases in support of their argument that McKinney owed a duty to Melody. These cases, however, are not controlling because they involve the negligent release of or obstruction by an inanimate object that injured the plaintiff. *See Atchison v. Tex. & P. Ry. Co.*, 186 S.W.2d 228 (Tex. 1945) (owner liable when smoke from a grass fire negligently set by owner left his property and caused a collision on an adjacent highway); *Hamric v. Kansas City Southern Railway Co.*, 718 S.W.2d 916 (Tex. App.—Beaumont 1986, writ. ref'd n.r.e.) (owner liable for injury caused by tall grass obscuring motorist's view of intersection); *Beaumont Iron Works Co. v. Martin*, 190 S.W.2d 491, 495 (Tex. Civ. App.—Beaumont 1945, writ ref'd w.o.m.) (owner liable when window pane fell onto pedestrian on sidewalk below); *Texas & P. Ry. Co. v. Brandon*, 183 S.W.2d 212, 214 (Tex. Civ. App.—Eastland 1944, writ ref'd) (owner liable when combustible materials left on property caused a fire which spread onto neighboring property). In this case, wild animals left McKinney's property and injured Melody. McKinney did not negligently release any inanimate object or negligently create an inanimate obstruction which injured Melody.

The facts of this case are tragic. But just as landowners do not have a duty to warn their *guests* about the presence and behavior patterns of every species of indigenous wild animals and plants which pose a potential threat to a person's safety, *see Nicholson v. Smith*, 986 S.W.2d 54, 63 (Tex. App.—San Antonio 1999, no writ), landowners should not have a duty to guard against injury to someone *in another location* from every species of

indigenous wild animals which may roam from the landowner's property. We decline the invitation to create and impose such a duty on a landowner.

Accordingly, we hold that McKinney owed no common law duty to Melody, and the trial court did not err in granting summary judgment on the heirs's general negligence claim.

The heirs's first issue is overruled.

**OTHER NEGLIGENCE-BASED CLAIMS**

Along with a general negligence claim, the heirs alleged negligent undertaking and nuisance claims against McKinney. McKinney asserted in his motion for summary judgment, that because negligent undertaking and nuisance are negligence-based claims, a finding of no common law duty regarding the heirs's general negligence claim would negate the duty for the heirs's negligent undertaking and nuisance claims, and summary judgment would be proper.

*Negligent Undertaking*

The heirs allege that prior to the event resulting in Melody's death, McKinney had attempted to eradicate the bees but the effort failed. They allege this gives rise to a negligent undertaking claim. The critical inquiry concerning the duty element of a negligent undertaking claim is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist. *See Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). Thus, the determination that McKinney does not have a common law duty with regard to wild animals that leave his property does not negate the duty element in a claim for negligent undertaking. This was, however, the only basis upon

which McKinney attempted to negate the duty. Because McKinney raised no other ground for summary judgment as to the heirs's negligent undertaking claim, summary judgment was improper on this claim.

The heirs's third issue is sustained.

*Nuisance*

The term "nuisance" refers not to a defendant's conduct or to a legal claim or cause of action but to a type of legal injury involving interference with the use and enjoyment of real property. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 588 (Tex. 2016). A defendant can be liable for causing a nuisance if the defendant intentionally causes it, negligently causes it, or—in limited circumstances—causes it by engaging in abnormally dangerous or ultra-hazardous activities. *Id*. *See also City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997). The heirs alleged all three of these categories of nuisance in their claim against McKinney.

A negligently-caused-nuisance claim is governed by ordinary negligence principles. *Crosstex*, 505 S.W.3d at 607. The elements the plaintiff must prove are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Id*. The only unique element, which derives from the nature of the legal injury on which the plaintiff bases the claim, is the burden to prove that the defendant's negligent conduct caused a nuisance, which in turn resulted in the plaintiff's damages. *Id*. We have already determined that McKinney owed no common law duty to Melody.

Thus, McKinney conclusively negated one essential element of the negligently-caused-nuisance claim and is thus entitled to judgment as a matter of law. The trial court did not err in granting summary judgment as to this claim.

Intentional nuisance and strict-liability nuisance claims, however, do not require proof of the general common law duty owed. Rather, to prove an intentional nuisance, the evidence must establish that the defendant intentionally caused the interference that constitutes the nuisance, not just that the defendant intentionally engaged in the conduct that caused the interference. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 605 (2016). And, to the extent that a strict-liability-nuisance claim exists in Texas based on a nuisance created by "abnormal and out of place" conduct, it arises only out of conduct that constitutes an "abnormally dangerous activity" or involves an abnormally "dangerous substance" that creates a "high degree of risk" of serious injury. *Id*. McKinney did not negate any element of these two categories of nuisance claims.[5] Accordingly, the trial court erred in granting summary judgment on the heirs's claims of intentionally-caused-nuisance and strict-liability-nuisance.

Because the heirs discussed the propriety of the summary judgment regarding their nuisance claims within their second issue which also discusses the propriety of the summary judgment regarding their negligence per se claim, we sustain the second issue

---

[5] To understand this shortfall in McKinney's evidence, one only has to understand that the determination that there was no common law duty does not also dispose of these claims.

in part as described above.

## NEGLIGENCE *PER SE*

Negligence *per se* is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in general negligence claims. *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). For one to prove negligence *per se*, therefore, he must prove (1) a violation of the penal standard, (2) which is unexcused. *S. Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973). However, not every penal statute creates an appropriate standard of care for civil liability purposes; therefore, a court is not required to adopt the penal statute's standard. *Smith*, 940 S.W.2d at 607. Thus, there are three threshold questions to be answered by the court in every negligence *per se* case: whether the plaintiff belongs to the class that the statute was intended to protect, whether the plaintiff's injury is of a type that the statute was designed to prevent, and whether, based on several non-exclusive factors, it is appropriate to impose tort liability for violations of the statute in question. *See Perry v. S.N.*, 973 S.W.2d 301, 305, 309 (Tex. 1998).

The heirs alleged that McKinney allowed a condition to exist on his property that constituted a breeding place for bees in violation of a City of Midlothian ordinance, and that conduct constituted negligence *per se*. The relevant section of the ordinance relied upon by the heirs, provides:

Unlawful activities include but are not limited to:

(7) Any and all of the following conditions, acts, commissions, omissions or deeds by any person shall be and are hereby declared to be a nuisance;

***

(16) Any condition allowed to exist which constitutes a breeding place for flies, mosquitoes, bees, and other offensive insects.

***

It shall be unlawful for any person, whether owner, agent, occupant or any other person having supervision or control, of any lot, tract or parcel of land, or a portion thereof, occupied or unoccupied, within the city to allow, suffer or permit a nuisance as defined herein to exist.

The specific provision alleged by the heirs in their petition to have been violated is subsection (16).

McKinney did not move for summary judgment on any of the threshold questions of a negligence *per se* claim. Rather, McKinney only asserted in his motion for summary judgment that he was entitled to judgment as a matter of law because he did not violate the ordinance. Thus, the trial court's judgment can be upheld, if at all, only on that ground.[6] *See Perry*, 973 S.W.2d at 303.

McKinney attached deposition testimony of Debbie Lubke, the Community Services Supervisor for the City of Midlothian who has jurisdiction over Code Enforcement, Human Health and Animal Services and is in charge of enforcing the ordinance in question, to his motion for summary judgment to negate the violation of the ordinance element to the heirs's claim. According to Lubke, a violation of subsection (16) does not occur until she observes the alleged condition that is allowed to exist, provides notice to the property owner to correct the condition, and the property owner fails to

---

[6] A decision on this ground is not to be interpreted as a decision that any of the threshold questions were answered affirmatively by this Court.

correct the condition within 10 days from the notice. The unlawful activity, or violation, is allowing the condition to exist after the expiration of the 10 day notice period. McKinney had never been notified by the City regarding a prospective violation of this, or any, city ordinance.

The heirs attached evidence to their response as well and asserted that the condition itself, whether or not the City noticed it, is the violation. Lubke disagreed with this assertion. She reaffirmed that a violation did not occur until after the 10 day period had run without compliance. As additional evidence that McKinney violated the ordinance, the heirs pointed to a police report made in the days after Melody's attack which noted that a large concentration of bees on McKinney's garage wall became agitated when approached. But the report also noted that bees were observed lying in the street and apparently dying, the bees on the garage wall had been sprayed by an exterminator specializing in bee extermination, and the exterminator would be out that evening or the next morning to check on the progress of the extermination. Further, Lubke viewed subsection (16) as a prohibition to allowing a condition which constitutes a breeding place for bees, not as a prohibition to swarms of bees or any other condition regarding bees.

Although McKinney agreed with opposing counsel that he understood the bees were getting back behind the garage exterior wall panel, building their hive, and "just sort of breeding back there," there was no summary judgment evidence as to what "condition" was allowed by McKinney which "constitutes a breeding place" for bees. The ordinance provides no guidance for these phrases, and the only evidence regarding

what a condition or a breeding place might be came from Lubke who did not know what kinds of conditions attracted bees or what type of activity to look for in a residence that would be attractive to bees.

Accordingly, after reviewing the summary judgment evidence, we agree that McKinney conclusively negated the essential element of the heirs's negligence *per se* claim that McKinney violated a City of Midlothian municipal ordinance. The trial court did not err in granting summary judgment as to this claim.

The heirs's second issue as to their negligence *per se* claim is overruled.

**CONSCIOUS PAIN AND SUFFERING AND MENTAL ANGUISH**

In their fourth issue, the heirs contend the trial court erred in granting McKinney's motion for summary judgment on the heirs's claim for damages for the conscious physical pain and suffering and conscious mental anguish suffered by Melody prior to her death. McKinney asserted in his motion for summary judgment that, if the trial court found he owed a duty to Melody, McKinney was entitled to summary judgment on the heirs's conscious physical pain and suffering and conscious mental anguish damages claim because Melody was essentially brain-dead from the time emergency personnel arrived at the scene to the time of her pronounced death and thus, suffered no conscious physical pain and suffering or conscious mental anguish. Because the trial court granted summary judgment and ordered that the heirs take nothing on their claims against McKinney, the trial court necessarily found that McKinney owed no duty to Melody and did not violate a municipal ordinance. Thus, the court did not reach this alternate ground in McKinney's motion.

Accordingly, because the trial court did not reach the alternate ground, we also do not reach it. Thus, there is no error by the trial court, and the heirs's fourth issue is overruled. This leaves the resolution of this ground to the trial court for its initial review and determination, if necessary, on remand.

**CONCLUSION**

Having overruled the heirs's first and fourth issues and the heirs's second issue in part, we affirm the trial court's summary judgment as to the heirs's claims for common-law negligence, negligently-caused nuisance, and negligence *per se*. Having sustained the heirs's third issue and the heirs's second issue in part, we reverse the trial court's summary judgment as to the heirs's claims of negligent undertaking and intentional and strict liability nuisance. Accordingly, this appeal is remanded to the trial court for further proceedings consistent with this opinion.[7]

TOM GRAY
Chief Justice

---

[7] We do not fault the trial court for making a blanket ruling on McKinney's motion for summary judgment based on McKinney's global "no duty" argument. Neither party provided sufficient briefing or argument to apprise the trial court of the specific elements for each claim asserted by the heirs or whether McKinney negated or did not negate at least one element of each claim. However, while we have determined that the remanded claims are not dependent on a common law negligence duty, because the issues are not before us, we express no opinion on the validity or vitality of the remanded claims. Moreover, as to the heirs's "claims" of various types of nuisance, the Texas Supreme Court's opinion in *Crosstex*, issued after the heirs's brief was filed, should provide the parties and the trial court guidance on remand. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016).

Before Chief Justice Gray,
     Justice Davis, and
     Judge Towslee Corbett[8]
Affirmed in part and reversed and remanded in part
Opinion delivered and filed March 14, 2018
[CV06]



---

[8] The Honorable Reva Towslee Corbett, Judge of the 335th District Court of Bastrop, Burleson, Lee, and Washington Counties, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2013).